UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Civil Action No. 21-3030 (TNM) |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS AS
TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Civil Rule 7(h), Defendants hereby submit this statement of material facts as to which there is no genuine dispute in support of their motion for summary judgment in this Freedom of Information Act ("FOIA") case.

**I.      Plaintiffs' FOIA Requests**

   **A. Requests to ICE**

   1.     Plaintiff submitted two FOIA requests to ICE that were dated March 8, 2021. Declaration of Fernando Pineiro ("Pineiro Decl.") ¶¶ 8-9.

   2.     The first FOIA request ("Request One") sought the following records: "Copies of the 'Detainee Death Review' reports completed by or for ICE Office of Professional Responsibility as part of the detainee death reviews for each of the following individuals who died in custody: (1) Gourgen Mirimnian; (2) Roberto Rodrig[ue]z-Espinoza; (3) Roylan Hernandez-Diaz; (4) Anthony Oluseye Akinyemi; (5) Samuelino Mavinga; (^) Ben James Owen; (7) Altero Hernandez-Fundora; (8) David Hernandez-Colua; (9) Maria Celeste Ochoa-Yoc De Ramirez; (10) Orlan Ariel Carcamo-Navarro; (11) Ramiro Hernandez-Ibarra; (12) Carlos Ernesto Escobar-Mejia; (13) Oscar Lopez Acosta; (14) Choung Woong Ahn; [and] (15) Santiago Baten-Oxlai." Compl. ¶ 9.

1

3. The second FOIA request ("Request Two") sought the following records: "Copies of the "Healthcare and Security Compliance Analysis, reports – or equivalent internal procedural compliance analysis – completed by or for ICE Office of Professional Responsibility as part of the detainee death reviews for each of the following individuals who died in custody: (1) Gourgen Mirimnian; (2) Anthony Oluseye Akinyemi; (3) Samuelino Mavinga; (4) Ben James Owen; (5) Altero Hernandez-Fundora; (6) David Hernandez-Colua; (7) Maria Celeste Ochoa-Yoc De Ramirez; (8) Orlan Ariel Carcamo-Navarro; (9) Ramiro Hernandez-Ibarra; (10) Carlos Ernesto Escobar-Mejia; (11) Oscar Lopez Acosta; (12) Choung Woong Ahn; [and] (13) Santiago Baten-Oxlai." *Id.* ¶ 12.

4. Plaintiff submitted five additional FOIA requests to ICE that were dated October 12, 2021. Pineiro Decl. ¶ 9.

5. The third FOIA request ("Request Three") sought the following records: "A complete copy of any ICE Health Service Corps "Event Review," "Root Cause Analysis," or "Action Plan" completed for each of the following individuals who died in ICE custody: (1) Gourgen Mirimnian; (2) Roxsana Hernandez; (3) Huy Chi Tran; (4) Efrain Romero de la Rosa; (5) Augustina Ramirez-Arreola; (6) Wilfredo Padron; (7) Mergensana Amar; (8) Guerman Volkov; (9) Abel Reyes-Clemente; (10) Simratpal Singh; (11) Pedro Arriago-Santoya; (12) Roberto Rodruiuez-Espinoza; (13) Nebane Abienwi; (14) Roylan Hernandez-Diaz; (15) Anthony Oluseye Akinyemi; (16) Samuelino Mavinga; (17) Ben James Owen; (18) Alberto Hernandez-Fundora; (19) David Hernandez-Colula; (20) Maria Celeste Ochoa-Yoc De Ramirez; (21) Orlan Ariel Carcamo-Navarro; (22) Ramiro Hernandez-Ibarra; (23) Carlos Ernesto Escobar-Mejia; (24) Oscar Lopez Acosa; (25) Choung Woong Ahn; (26) Santiago Baten-Oxlaj; (27) Onoval Perez-Montufa; (28) Luis Sanchez-Perez; (29) James Tomas Hill; (30) Kuah Hui Lee; (31) Jose Freddy

Guillen Vega; (32) Fernando Sabonger-Garcia; (33) Cipriano Chavez Alvarez; (34) Romien Jally; (35) Anthony Jones; (36) Felipe Montes; (37) Jesse Dean; [and] (38) Diego Fernando Gallego-Agudelo." Compl. ¶ 16.

6. The fourth FOIA request ("Request Four") sought the following records: "A complete copy of any 'Detainee Death Review' reports completed by or for ICE Office of Professional Responsibility as party of the detainee death reviews for each of the following individuals who died in ICE custody: (1) Onoval Perez-Montufa; (2) Luis Sanchez-Perez; (3) James Tomas Hill; (4) Kuah Hui Lee; (5) Jose Freddy Guillen Vega; (6) Fernando Sabonger-Garcia; (7) Cipriano Chavez Alvarez; (8) Romien Jally; (9) Anthony Jones; (10 Felipe Montes; (11) Jesse Dean; [and] (12) Diego Fernando Gallego-Agudelo." Compl. ¶ 19.

7. The fifth FOIA request ("Request Five") sought the following records: "Copies of the "Healthcare and Security Compliance Analysis, reports – or equivalent internal procedural compliance analysis – completed by or for ICE Office of Professional Responsibility as part of the detainee death reviews for each of the following individuals who died in custody: (1) Onoval Perez-Montufa; (2) Luis Sanchez-Perez; (3) James Tomas Hill; (4) Kuah Hui Lee; (5) Jose Freddy Guillen Vega; (6) Fernando Sabonger-Garcia; (7) Cipriano Chavez Alvarez; (8) Romien Jally; (9) Anthony Jones; (10 Felipe Montes; (11) Jesse Dean; [and] (12) Diego Fernando Gallego-Agudelo." Compl. ¶ 22.

8. The sixth FOIA request ("Request Six") sought the following records: "A complete copy of any independent autopsies supplied to DHS or ICE, including those by county or state medical examiners, for each of the following individuals who died in ICE custody: (1) Onoval Perez-Montufa; (2) Luis Sanchez-Perez; (3) James Tomas Hill; (4) Kuah Hui Lee; (5) Jose Freddy Guillen Vega; (6) Fernando Sabonger-Garcia; (7) Cipriano Chavez Alvarez; (8) Romien Jally; (9)

3

Anthony Jones; (10) Felipe Montes; (11) Jesse Dean; [and] (12) Diego Fernando Gallego-Agudelo." Compl. ¶ 25.

9. The seventh FOIA request ("Request Seven") sought the following records: "A complete copy of any ICE Health Service Corps 'Mortality review' reports completed as part of the detainee death reviews for each of the following individuals who died in ICE custody: (1) Onoval Perez-Montufa; (2) Luis Sanchez-Perez; (3) James Tomas Hill; (4) Kuah Hui Lee; (5) Jose Freddy Guillen Vega; (6) Fernando Sabonger-Garcia; (7) Cipriano Chavez Alvarez; (8) Romien Jally; (9) Anthony Jones; (10) Felipe Montes; (11) Jesse Dean; [and] (12) Diego Fernando Gallego-Agudelo." Compl. ¶ 28.

## II. ICE's Search for Responsive Records

10. ICE's FOIA Office is assigned with responsibility for determining, upon receipt of a FOIA request, which program office(s) are likely to possess records that are potentially responsive to the received FOIA request. Pineiro Decl. ¶¶ 14, 16.

11. ICE records are maintained by directorates and leadership offices such as: the Enforcement and Removal Operations ("ERO"); Homeland Security Investigations; the Management and Administration; the Office of Principal Legal Advisor; and the Office of Professional Responsibility ("OPR"). *Id.* ¶ 15.

12. Each program office is staffed with a point-of-contact ("POC") "who is the primary person responsible for communications between that program office and the ICE FOIA office." *Id.*

13. "Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs in each of those program offices with a copy of the FOIA Request and instructs them to conduct a search for responsive records." *Id.* ¶ 17.

4

14.     "The POCs then review the FOIA request, along with any case-specific instructions provided by the ICE FOIA Office and based on their experience and knowledge of their program office's practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any." *Id*.

15.     "ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records, among others. Similarly, ICE employees maintain records in several ways, including storing electronic records on their individual computer hard drives, on their program office's shared drive (if the office uses one) or, less commonly, on DVDs, CDs, or USB storage devices.  The determination of which locations need to be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files." *Id*. ¶ 19.

16.     "Additionally, all ICE employees have access to email.  ICE uses the Microsoft Outlook email system.  ICE employees use various methods to store their Microsoft Outlook email files.  Some archive their files monthly, without separating by subject; others archive their email by topic or by program; and still others create PST files of their emails and store them on their hard drive or shared drive.  Like other searches of emails, an employee will complete a search of his email archive when he determines that the archive may contain potentially responsive documents.  This determination is based on his knowledge of the substance of the FOIA request, the FOIA tasking and instructions provided to him by ICE FOIA and/or the program office POC, and his knowledge of the method in which he stores his emails." *Id*. ¶ 20.

17. Upon receipt of potentially responsive records from the program office's POC, the ICE FOIA Office assigns a FOIA processor to perform a review and to determine whether the records are, in fact, responsive, and if responsive, whether any redactions should be made pursuant to FOIA or the Privacy Act. *Id.* ¶ 21.

18. "[W]hen an individual passes away while in ICE custody, the ICE Health Service Corps (IHSC), part of ERO, reviews the case to determine whether the detainee received appropriate health services in relation to nationally recognized standards of detention health care and practices. Additionally, ICE OPR […] conducts an objective examination of the facts and circumstances surrounding each individual's passing, to determine whether or not the relevant detention standards were complied with and to identify any other areas of concern regarding the individual's care and custody." *Id.* ¶ 26.

19. "Upon receipt and review of [Plaintiff's] FOIA requests and based on its familiarity with ICE records systems, the applicable records disposition schedules, and the substantive and functional mandates and missions of ICE offices, the ICE FOIA Office determined that ERO and/or OPR should be asked to conduct a search responsive to Plaintiff's FOIA Requests, if any. No other offices were tasked because, based on the subject matter of the FOIA requests (i.e., records associated with detainee death review), no other offices were reasonably likely ot have responsive records or would reasonably be expected to have responsive records." *Id.* ¶ 27.

   A. **Request One and Request Four: Detainee Death Reviews (DDRs)**

20. On May 18, 2021, the ICE FOIA Office forwarded Request One to the OPR. *Id.* ¶ 28.

21. "When OPR receives a FOIA tasking from the ICE FOIA Office, the request is submitted to the OPR FOIA Coordinator who reviews the substance of the FOIA request. Based

on their subject matter expertise and knowledge of the program offices' activities within OPR, the OPR FOIA Coordinator forwards the request to specific individuals and/or component offices within OPR to conduct searches of the file systems that in the individuals' judgement, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any." *Id.* ¶ 29.

22. Upon receipt of Request One, the OPR FOIA Coordinator tasked the OPR External Reviews and Analysis Unit (ERAU) to conduct a search for responsive records. *Id.*

23. Among its various responsibilities, the ERAU performs DDRs, "which are independent, objective examinations of the facts and circumstances surrounding the detention and death of an individual in ICE custody to determine whether the agency and detention facility complied with detention standards related to the individual's health, safety, and security." *Id.* ¶ 30.

24. The Section Chief for OPR ERAU "is responsible for the continual day-to-day operations of their section, to include supervisory responsibilities over all employees assigned to the section and competition of the substantive work of the section." *Id.* ¶ 31. Additionally, the Section Chief for OPR ERAU "is the first-line supervisor of the staff conducting the DDRs." *Id.*

25. Upon being assigned to conduct a search for responsive records pursuant to Request One, the Section Chief for OPR ERAU determined that the locations most likely to contain responsive records were the ERAU SharePoint site, the Unit's shared drive, as well as his computer and Microsoft Outlook. *Id.* ¶ 31.

26. Accordingly, on May 27, 2021, using the names listed in Request One, the Section Chief for OPR ERAU conducted a search for responsive records in the aforesaid locations; and when the search was completed, he forwarded all responsive records to the OPR FOIA Coordinator. *Id.* ¶ 33.

27.  "Twelve of the fifteen requested reports were located. The Detainee Death Report for Oscar Lopez Acosta that was requested by the Plaintiff does not exist as this detainee died while not in ICE custody. Thus, only two of the fifteen reports were not located pursuant to this search." *Id.* n.9.

28.  On June 17, 2021, the OPR FOIA Coordinator provided the responsive records to the ICE FOIA Office. *Id.*

29.  On December 8, 2021, the ICE FOIA Office forwarded Request Four to the ERO and the OPR. *Id.* ¶ 34.

30.  "When the ERO receives a FOIA request from the ICE FOIA Office, the request is forwarded to the POC at the ERO Information Disclosure Unit (IDU)," who, after reviewing the request, forward it "to individuals and/or component offices within ERO to conduct searches of the file systems that in the individuals' judgment, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any." *Id.* ¶ 35.

31.  Upon receipt and review of Request Four by the ERO IDU POC, the ERO IDU POC "deferred to OPR, as ERO would not be the appropriate directorate to possess or maintain the subject reports, as the reports originate with and are generated by OPR." *Id*.  Thus, ERO did not conduct a search or provide any records responsive to Request Four.

32.  The Unit Chief for the OPR ERAU "is responsible for managing subordinate Section Chiefs, establishing and ensuring adherence to internal policies, coordinating with ICE and other stakeholders on new/revised polices and other issues, and reporting unit metrics to ICE leadership. The Unit Chief reviews all OPR ERAU work product prior to final distribution." *Id.* ¶ 37.

33. On December 9, 2021, the Unit Chief for the OPR ERAU determined that the ERAU SharePoint site was the most likely location to contain records responsive to Request Four, and accordingly conducted a search for responsive records utilizing the names listed in Request Four. *Id.* ¶ 37.

34. "Pursuant to this search OPR located all of the Detainee Death Review Reports requested in Request Four." *Id.* n. 10.

35. On December 13, 2021, the Unit Chief for OPR ERAU forwarded all responsive records to the OPR FOIA Coordinator. *Id.* ¶ 38.

36. On September 20, 2022, based upon ongoing discussions with Plaintiff, to potentially resolve any outstanding issues, the Unit Chief for OPR ERAU conducted a supplemental search for responsive records to Request One on the OPR ERAU SharePoint site. *Id.* ¶ 39. This supplemental search yielded two additional records responsive to Request Four. These two additional records were created after the date of the initial records search, and so could not have been captured during the initial records search pursuant to Request One. *Id.* n. 11.

37. On September 27, 2022, the two additional records responsive to Request Four were provided to the ICE FOIA Office. *Id.*

**B.      Requests Two and Five: Healthcare and Security Compliance Analysis Reports**

38. On May 18, 2021, the ICE FOIA Office forwarded Request Two to the OPR and the ERO. *Id.* ¶ 40.

39. Upon receipt and review of Request Two by the ERO IDU POC, the ERO IDU POC "deferred to OPR, as ERO would not be the appropriate directorate to possess or maintain the subject reports, as the reports originate with and are generated by OPR." *Id.* ¶ 41. Thus, ERO did not conduct a search or provide any records responsive to Request Two.

40. Upon receipt and review of Request Two by OPR's FOIA Coordinator, the OPR ERAU was tasked with conducting a search for responsive records, because "[a]s part of the DDR process, healthcare and security compliance analyses are completed and incorporated into the final DDR Reports, which are completed by OPR ERAU." *Id.* ¶ 41.

41. On June 3, 2021, using the names of the detainees listed in Request Two, the Unit Chief for OPR ERAU conducted a search for records responsive to Request Two on Unit's SharePoint site and her Microsoft Outlook.

42. "All but one of the requested reports were located pursuant to this search. The additional report for Oscar Lopez Acosta that was requested by the Plaintiff does not exist as this detainee died while not in ICE custody. Additionally, three of the reports were in draft form and will be addressed in the Vaughn Index." *Id*. n. 14.

43. After retrieving the aforesaid responsive records, the Unit Chief for OPR ERAU forwarded all responsive records to the OPR FOIA Coordinator. *Id.* ¶ 43.

44. On June 17, 2021, the OPR FOIA Coordinator provided the responsive records to the ICE FOIA Office. *Id.* ¶ 44.

45. Subsequently, on December 8, 2021, the ICE FOIA Office forwarded Request Five to the ERO and the OPR. *Id.* ¶ 45.

46. Upon receipt and review of Request Two by the ERO IDU POC, the ERO IDU POC once again "deferred to OPR, as ERO would not be the appropriate directorate to possess or maintain the subject reports, as the reports originate with and are generated by OPR." *Id*. thus, ERO did not conduct a search or provide any records responsive to Request Five.

47. On December 9, 2021, the Unit Chief for OPR ERAU conducted a search for responsive records to Request Five on the ERAU's SharePoint site and her Microsoft Outlook. *Id.* ¶ 46.

48. "All of the reports requested by the Plaintiff were located by this search. Eight of the reports were drafts and will be addressed in the Vaughn Index." *Id.* n. 15.

49. On December 13, 2021, the OPR FOIA Coordinator provided the responsive records to the ICE FOIA Office. *Id*.

50. On September 20, 2022, based upon ongoing discussions with Plaintiff to potentially resolve any outstanding issues, OPR ERAU Unit Chief conducted a supplemental search for responsive records to Requests One and Four on the OPR ERAU SharePoint site to locate any reports that were previoulsy produced as drafts that may have been finalized since the initial search. No additional records, including any final drafts of the subject reports were located pursuant to this supplemental search. *Id.* ¶ 47.

   **C.**  **Request Three: Root Cause Analysis Reports, Event Reviews, or Action Plans**

51. On December 8, 2021, the ICE FOIA Office forwarded Request Three to the ERO. *Id.* ¶ 48.

52. Upon receipt and review of Request Three by the ERO IDU POC, the ERO IDU POC, "based upon [her] subject matter expertise and the subject matter of Request Three, […] tasked ERO IHSC with a search for responsive records." *Id*.

53. "ERO IHSC provides medical, dental, and mental health care to persons in ICE custody. IHSC also oversees compliance with detention standards related to healthcare for detainees housed in non-IHSC staffed facilities and also directly supports ICE filed office directors on medical issues." *Id.* ¶ 49.

54. Importantly, the ERO IHSC is the ICE program office which invariably generates the reports that Plaintiff sought in Request Three. *Id.* ¶ 50.

55. Upon receipt and review of Request Three, the ERO IHSC program coordinator identified the ERO IHSC Medical Quality and Management Unit (MQMU), ERO IHSC Medical Case Management Unit (MCMU), and ERO IHSC Investigations Unit (IIU) as being the offices within ERO IHSC most likely to have responsive records to Request Three, should they exist." *Id.*

56. The ERO IHSC MQMU is responsible for evaluating and reviewing the quality of health care delivery to ICE detainees in ICE custody at ICE IHSC facilities, and conducts event reviews, root cause analysis, and action plans for IHSC staffed facilities. *Id.* ¶ 51.

57. The responsibilities of the Compliance-Heathcare Risk Management Program Manager (HRM) for ERO IHSC MQMU includes "coordinat[ing] risk management activities, e.g., root cause analysis of incidents that occurred in the facilities and provid[ing] proactive risk reduction strategies." *Id*. 52.

58. On January 26, 2022, using the names listed in Request Three, the ERO IHSC MQMU HRMsearched every facility folder and every folder containing event reviews, root cause analysis and action plans on the MQMU SharePoint Site for responsive records *Id*. 52.

59. "A total of six reports were located. Two of the reports were in draft form and will be addressed in the Vaughn Index." *Id*. n. 17.

60. After completion of the records search, the ERO IHSC MQMU HRMforwarded the responsive records to the ERO IDU POC. *Id.* ¶ 52.

61. On March 2, 2022, the ERO IDU POC forwarded the responsive records to the ICE FOIA office. *Id.*

12

62.     ERO IHSC MCMU coordinates continuity of care and ensures health services for individuals in ICE custody are in accordance with the ICE Performance Based National Detention Standards (PBNDS) and ICE National Detention Standards (NDS). *Id.* ¶ 53.

63.     ERO IHSC MCMU operations are segmented on a regional basis: more specifically, the Western, Eastern, and Central Regions, each with a specially assigned Field Medical Coordinator (FMC). "The FMC is the individual responsible for, among other things, assisting with the evaluation of compliance with the medical portion of the ICE NDS and PBNDS at local and county detention facilities within their area of responsibility." *Id.*

64.     Each of the FMC's for the aforesaid regional branches of MCMU conducted searches on their respective shared drives and Microsoft Outlook folders. No responsive records were located pursuant to Request Three. *Id.* ¶¶ 54 – 56.

65.     "The ERO IHSC IIU investigates allegations of inappropriate healthcare provided to individuals in ICE custody, investigates incidents or mortality and significant morbidity of individuals in ICE custody, investigates and monitor high risk/high profile incidents, and collaborates with other ICE and IHSC programs to mitigate risks identified during reviews and investigations." *Id.* ¶ 57.

66.     Further, "[a]s it pertains to ERO IHSC IIU, that Unit completes and compiles detainee death mortality reviews, not even reviews, root cause analyses or ation plans and thus would not have records responsive toRequest Five." *Id.* ¶ 61.

67.     As such, on February 2, 2022, the ERO IHSC IIC POC "provided a response that the Unit would not have records responsive to the requests, as they are not generated by the Unit." *Id.* ¶ 58. Thus, ERO IHSC IIU did not conduct a search or provide any records responsive to the Request.

68. On September 20, 2022, and based upon ongoing discussions with Plaintiff to attempt to resolve any outstanding issues ERO IHSC MQMU, ERO IHSC MCMU, and ERO IHSC IIU were re-tasked with a supplemental search for responsive records. *Id.* ¶ 59. While ERO IHSC MQMU's supplemental search yielded duplicative records  no additional responsive records were discovered by ERO IHSC MQMU, ERO IHSC MCMU, and ERO IHSC IIU.

D. **Request Six: Independent Autopsies**

69. On December 8, 2021, the ICE FOIA Office forwarded Request Six to the OPR and the ERO. *Id.* ¶ 63.

70. The OPR FOIA Coordinator tasked OPR ERAU with a search for records responsive to Request Six, because "[a]s part of the DDR process, independent autopsies are requested and reviewed by OPR ERAU, incorporated into and attached to the final DDR, when available." *Id.* ¶ 64.

71. On December 9, 2021, the Unit Chief of OPR ERAU conducted a search for independent autopsies responsive to Request Six on the OPR ERAU's SharePoint site. *Id.* ¶ 65.

72. The Unit Chief of OPR ERAU searched the case folders assigned to each of the detainees listed in Request Six. *Id*.

73. "Six of the autopsy reports were not located pursuant to the search. **ICE will note that the independent autopsies are conducted by and originated within the relevant state medical examiners offices**. Additionally, ICE notes that a review of the DDRs for the six autopsy reports that were not located confirms that ICE did not receive the autopsy reports prior to the public of the final DDRs. The autopsy reports are not listed as attachments to the DDR and in at least one case, a footnote in the DDR states that an autopsy was not completed." *Id.* n. 24 (emphasis added).

74. On December 13, 2021, the OPR FOIA Coordinator forwarded records responsive to Request Six to ICE's FOIA Office. *Id*.

75. On December 8, 2021, and after receipt and review of Request Six, the ERO IDU POC forwarded Request Six to ERO IHSC. Subsequently, the ERO IHSC program coordinator assigned Request Six to ERO IHSC IIU, which "during the course of detainee death investigations, […] may also review any independent autopsies that have been provided by the relevant medical examiners' offices and incorporate the findings into the final Mortality Review Report." *Id.* ¶ 66.

76. On January 4, 2022, using the detainee names listed in Request SIX, an ERO IHSC IIU investigator conducted a search for responsive records in the ERO IHSC IIU SharePoint site and her Microsoft Outlook." *Id.* ¶ 68.

77. The ERO IHSC IIU investigator was only able to retrieve duplicative records that were already produced by OPR ERAU. *Id*.

78. As for the independent autopsy reports that were not found, "the ERO IHSC did not have copies due to the coroner not performing an autopsy or the relevant state not responding to the request for a copy." *Id*.

79. On December 8, 2022, and based upon ongoing discussions with Plaintiff, ERO was re-tasked with a supplemental search for responsive records. No additional reports were located. *Id.* ¶ 69.

**E.  Request Seven: Mortality Reviews**

80. On December 8, 2021, the ICE FOIA Office forwarded Request Seven to the ERO. *Id.* ¶ 70.

81. The ERO IDU POC tasked ERO IHSC, which is the program office within ICE that generates the reports referenced in Request Seven, with a search for responsive records. *Id*.

82. Upon receipt and review of Request Seven, the ERO IHSC program coordinator assigned Request Seven to the ERO IHSC IIU. *Id*.

83. On January 6, 2022, and using the detainee names listed in Request Seven, an ERO IHSC IIU investigator conducted a search for records responsive to Request Seven on the ERO IHSC IIU SharePoint and her Microsoft Outlook. *Id*. ¶ 73.

84. Pursuant to this search, "ERO IHSC IIU located eight of the twelve requested reports." *Id*. n. 27.

85. Records responsive to Request Seven were forwarded to the ICE FOIA Office on January 18, 2022. *Id*.

86. On October 6, 2022, based upon ongoing discussions with Plaintiff to attempt to resolve outstanding issues ERO was re-tasked with a supplemental search for additional records responsive to Request Seven. *Id*. ¶ 74.

87. On November 29, 2022, and using the detainee names listed in Request Seven, an ERO IHSC IIU investigator conducted the supplemental search for responsive records on the ERO IHSC IIU SharePoint site and her Microsoft Outlook. *Id*. ¶ 76.

88. Pursuant to the supplemental search, ERO IHSC IIU located the remaining four reports. *Id*. n. 28. Each of the four reports were dated after the initial search was conducted on January 6, 2022, and thus would not have been captured at the time of that search. *Id*. Moreover, two of the four reports were preliminary reports, which were produced to the Plaintiff, and as of the date of the final search, final reports were not available. *Id*.

89. On November 29, 2022, the newly located responsive records were forwarded to ICE FOIA Office. *Id*. ¶ 76.

III. **Withholdings**

   A. **Exemption 3**

   90. Pursuant to FOIA Exemption 3, ICE withheld information that is "covered by non-disclosure statutes and regulations that mandate the confidentiality of the information and that survive the death of the non-citizens at issue." *Id.* ¶ 82.

   91. Additional information elucidating ICE's application of Exemption 3 is provided in ICE's *in camera* and *ex parte* Vaughn Index and Declaration.

   B. **Exemption 5**

   92. Pursuant to FOIA Exemption 5, ICE withheld information pursuant to the deliberative process privilege. *Id.* ¶ 85.

   93. Pursuant to FOIA Exemption 5's deliberative process privilege, ICE withheld from disclosure – among other things – "the opinions, edits, comments, conclusions, and recommendations suggested in […] unfinalized draft reports" contained in ICE's draft Healthcare and Security Compliance Analysis reports and Root Cause Analysis and Action Plan reports. *Id.*

   C. **Exemption 7**

   94. ICE is a law enforcement agency under the purview of DHS. *Id.* ¶ 23

   95. Plaintiff's FOIA requests sought law enforcement records. *See Id.* ¶ 99.

   Exemption 7(C)

   96. Pursuant to FOIA Exemption 7(C), as well as Exemption 6, ICE withheld information "to protect from disclosure information that could reasonably be expected to constitute an unwarranted invasion of privacy" of the survivors of the deceased non-citizens. *Id.* ¶ 116.[1]

---

[1] Plaintiff has indicated that ICE's Exemption 6 assertions will not be challenged, and for that reason, the propriety of ICE's Exemption 6 withholdings are not separately briefed in the instant Motion.

97. Additional information elucidating ICE's application of Exemption 7(C) is provided in ICE's *ex parte Vaughn* Index and Declaration.

Exemption 7(E)

98. Pursuant to FOIA Exemption 7(E), ICE withheld, among other things, information that identified the location of security and surveillance cameras located at law enforcement facilities, as well as internal photographs of the facilities. *Id.* ¶ 103.

99. Pursuant to FOIA Exemption 7(E), ICE withheld, among other things, information that – if disclosed – could reasonably be expected to risk circumvention of the law, by disclosing techniques and/or procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions. *Id.* ¶ 101.

100. Pursuant to FOIA Exemption 7(E), ICE withheld, among other things, information pertaining to staffing numbers, staffing shortages, and potential security vulnerabilities based on staffing at relevant ICE detention facilities. *Id.* ¶ 104.

101. Pursuant to FOIA Exemption 7(E), ICE withheld, among other things, information pertaining to internal security and internal security vulnerabilities at the relevant ICE detention facilities, including specifics on security features utilized by the relevant detention facilities, specific times of security rounds, [and] specific times that head counts are conducted." *Id.* ¶ 105.

102. Pursuant to FOIA Exemption 7(E), ICE withheld, among other things, information "pertaining to the layout of the facilities, location of cells, what is located where within the facilities, location of security observation points, and location of guard stations." *Id.* ¶ 107.

**IV.  Segregability**

103. ICE carefully reviewed the responsive records on a line-by-line and page-by-page basis to identify reasonably segregable, non-exempt information to ensure that all such information was released. *Id.* ¶ 124.

104. ICE determined that all information withheld either was exempt from disclosure pursuant to a FOIA exemption or was so intertwined with protected material that segregation was not possible without revealing the underlying protected material. *Id.* ¶ 125.

105. ICE produced all the segregable, non-exempt information in the requested records, including the factual material that was presented in these records. *Id.* ¶ 126.

Date: March 3, 2023

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:   /s/ *FITHAWI BERHANE*
FITHAWI BERHANE
Assistant United States Attorney – Civil Division
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2551
Fithawi.Berhane@usdoj.gov

*Counsel for the United States of America*