**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-03030 (TNM) |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, *et al.,* | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**PLAINTIFF'S COMBINED STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE AND RESPONSE TO
DEFENDANTS' STATEMENT OF MATERIAL FACTS**

Pursuant to Local Civil Rule 7(h), Plaintiff American Oversight ("Plaintiff") hereby submits the following statement of material facts as to which Plaintiff contends there are no genuine issues in support of its cross motion for summary judgment against Defendants U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"). The attached Declaration of Taylor Stoneman in Support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment supports this statement.

**Plaintiff's Response to Defendants' Statement**

| Defendants' Statement of Material Fact | Plaintiff's Response |
|---|---|
| 1. Plaintiff submitted two FOIA requests to ICE that were dated March 8, 2021. Declaration of Fernando Pineiro ("Pineiro Decl.") ¶¶ 8–9. | Admitted. |
| 2. The first FOIA request ("Request One") sought the following records: "Copies of the 'Detainee Death Review' reports completed by or for ICE Office of Professional Responsibility as part of the detainee death reviews for each of the following individuals who died in custody: (1) Gourgen Mirimnian; (2) Roberto Rodrig[ue]z-Espinoza; (3) Roylan Hernandez-Diaz; (4) Anthony Oluseye Akinyemi; (5) Samuelino Mavinga; (6) Ben James Owen; (7) Altero Hernandez-Fundora; (8) David Hernandez-Colua; (9) Maria Celeste Ochoa-Yoc De Ramirez; (10) Orlan Ariel Carcamo-Navarro; (11) Ramiro Hernandez-Ibarra; (12) Carlos Ernesto Escobar-Mejia; (13) Oscar Lopez Acosta; (14) Choung Woong Ahn; [and] (15) Santiago Baten-Oxlai." Compl. ¶ 9. | Admitted that Defendants quote Plaintiff's FOIA Request One in part, and that Plaintiff seeks the described records. Plaintiff refers the Court to Exhibit 2 of the Pineiro Declaration for the full text of Plaintiff's request. *See* Pineiro Decl., Ex. 2 at 1–23. |
| 3. The second FOIA request ("Request Two") sought the following records: "Copies of the "Healthcare and Security Compliance Analysis, reports – or equivalent internal procedural compliance analysis – completed by or for ICE Office of Professional Responsibility as part of the detainee death reviews for each of the following individuals who died in custody: (1) Gourgen Mirimnian; (2) Anthony Oluseye Akinyemi; (3) Samuelino Mavinga; (4) Ben James Owen; (5) Altero Hernandez-Fundora; (6) David Hernandez-Colua; (7) Maria Celeste Ochoa-Yoc De Ramirez; (8) | Admitted that Defendants quote Plaintiff's FOIA Request Two in part, and that Plaintiff seeks the described records. Plaintiff refers the Court to Exhibit 2 of the Pineiro Declaration for the full text of Plaintiff's request. *See* Pineiro Decl., Ex. 2 at 24–54. |

| | |
|---|---|
| Orlan Ariel Carcamo-Navarro; (9) Ramiro Hernandez-Ibarra; (10) Carlos Ernesto Escobar-Mejia; (11) Oscar Lopez Acosta; (12) Choung Woong Ahn; [and] (13) Santiago Baten-Oxlai." *Id.* ¶ 12. | |
| 4.  Plaintiff submitted five additional FOIA requests to ICE that were dated October 12, 2021. Pineiro Decl. ¶ 9. | Admitted. |
| 5.  The third FOIA request ("Request Three") sought the following records: "A complete copy of any ICE Health Service Corps "Event Review," "Root Cause Analysis," or "Action Plan" completed for each of the following individuals who died in ICE custody: (1) Gourgen Mirimnian; (2) Roxsana Hernandez; (3) Huy Chi Tran; (4) Efrain Romero de la Rosa; (5) Augustina Ramirez-Arreola; (6) Wilfredo Padron; (7) Mergensana Amar; (8) Guerman Volkov; (9) Abel Reyes-Clemente; (10) Simratpal Singh; (11) Pedro Arriago-Santoya; (12) Roberto Rodruiuez-Espinoza; (13) Nebane Abienwi; (14) Roylan Hernandez-Diaz; (15) Anthony Oluseye Akinyemi; (16) Samuelino Mavinga; (17) Ben James Owen; (18) Alberto Hernandez-Fundora; (19) David Hernandez-Colula; (20) Maria Celeste Ochoa-Yoc De Ramirez; (21) Orlan Ariel Carcamo-Navarro; (22) Ramiro Hernandez-Ibarra; (23) Carlos Ernesto Escobar-Mejia; (24) Oscar Lopez Acosa; (25) Choung Woong Ahn; (26) Santiago Baten-Oxlaj; (27) Onoval Perez-Montufa; (28) Luis Sanchez-Perez; (29) James Tomas Hill; (30) Kuah Hui Lee; (31) Jose Freddy Guillen Vega; (32) Fernando Sabonger-Garcia; (33) Cipriano Chavez Alvarez; (34) Romien Jally; (35) Anthony Jones; (36) Felipe Montes; (37) Jesse Dean; [and] (38) | Admitted that Defendants quote Plaintiff's FOIA Request Three in part, and that Plaintiff seeks the described records. Plaintiff refers the Court to Exhibit 2 of the Pineiro Declaration for the full text of Plaintiff's request. *See* Pineiro Decl., Ex. 2 at 55–71. |

| | | |
|---|---|---|
| | Diego Fernando Gallego-Agudelo." Compl. ¶ 16. | |
| 6. | The fourth FOIA request ("Request Four") sought the following records: "A complete copy of any 'Detainee Death Review' reports completed by or for ICE Office of Professional Responsibility as party of the detainee death reviews for each of the following individuals who died in ICE custody: (1) Onoval Perez-Montufa; (2) Luis Sanchez-Perez; (3) James Tomas Hill; (4) Kuah Hui Lee; (5) Jose Freddy Guillen Vega; (6) Fernando Sabonger-Garcia; (7) Cipriano Chavez Alvarez; (8) Romien Jally; (9) Anthony Jones; (10) Felipe Montes; (11) Jesse Dean; [and] (12) Diego Fernando Gallego-Agudelo." Compl. ¶ 19. | Admitted that Defendants quote Plaintiff's FOIA Request Four in part, and that Plaintiff seeks the described records. Plaintiff refers the Court to Exhibit 2 of the Pineiro Declaration for the full text of Plaintiff's request. *See* Pineiro Decl., Ex. 2 at 72–94. |
| 7. | The fifth FOIA request ("Request Five") sought the following records: "Copies of the "Healthcare and Security Compliance Analysis, reports – or equivalent internal procedural compliance analysis – completed by or for ICE Office of Professional Responsibility as part of the detainee death reviews for each of the following individuals who died in custody: (1) Onoval Perez-Montufa; (2) Luis Sanchez-Perez; (3) James Tomas Hill; (4) Kuah Hui Lee; (5) Jose Freddy Guillen Vega; (6) Fernando Sabonger-Garcia; (7) Cipriano Chavez Alvarez; (8) Romien Jally; (9) Anthony Jones; (10) Felipe Montes; (11) Jesse Dean; [and] (12) Diego Fernando Gallego-Agudelo." Compl. ¶ 22. | Admitted that Defendants quote Plaintiff's FOIA Request Five in part, and that Plaintiff seeks the described records. Plaintiff refers the Court to Exhibit 2 of the Pineiro Declaration for the full text of Plaintiff's request. *See* Pineiro Decl., Ex. 2 at 95–125. |
| 8. | The sixth FOIA request ("Request Six") sought the following records: "A complete copy of any independent autopsies supplied to DHS or ICE, including those by county or state medical examiners, for each of the | Admitted that Defendants quote Plaintiff's FOIA Request Six in part, and that Plaintiff seeks the described records. Plaintiff refers the Court to Exhibit 2 of the Pineiro Declaration for the full text of Plaintiff's request. *See* Pineiro Decl., Ex. 2 at 126–67. |

| | | |
|---|---|---|
| | following individuals who died in ICE custody: (1) Onoval Perez-Montufa; (2) Luis Sanchez-Perez; (3) James Tomas Hill; (4) Kuah Hui Lee; (5) Jose Freddy Guillen Vega; (6) Fernando Sabonger-Garcia; (7) Cipriano Chavez Alvarez; (8) Romien Jally; (9) Anthony Jones; (10) Felipe Montes; (11) Jesse Dean; [and] (12) Diego Fernando Gallego-Agudelo." Compl. ¶ 25. | |
| 9. | The seventh FOIA request ("Request Seven") sought the following records: "A complete copy of any ICE Health Service Corps 'Mortality review' reports completed as part of the detainee death reviews for each of the following individuals who died in ICE custody: (1) Onoval Perez-Montufa; (2) Luis Sanchez-Perez; (3) James Tomas Hill; (4) Kuah Hui Lee; (5) Jose Freddy Guillen Vega; (6) Fernando Sabonger-Garcia; (7) Cipriano Chavez Alvarez; (8) Romien Jally; (9) Anthony Jones; (10) Felipe Montes; (11) Jesse Dean; [and] (12) Diego Fernando Gallego-Agudelo." Compl. ¶ 28. | Admitted that Defendants quote Plaintiff's FOIA Request Seven in part, and that Plaintiff seeks the described records. Plaintiff refers the Court to Exhibit 2 of the Pineiro Declaration for the full text of Plaintiff's request. *See* Pineiro Decl., Ex. 2 at 168–79. |
| 10. | ICE's FOIA Office is assigned with responsibility for determining, upon receipt of a FOIA request, which program office(s) are likely to possess records that are potentially responsive to the received FOIA request. Pineiro Decl. ¶¶ 14, 16. | Admitted* |
| 11. | ICE records are maintained by directorates and leadership offices such as: the Enforcement and Removal Operations ("ERO"); Homeland Security Investigations; the Management and Administration; the | Admitted* |

---

* Where an asterisk is indicated in Plaintiff's response (*i.e.*, "Admitted*"), Plaintiff does not have sufficient knowledge to admit or deny the accuracy of the assertion; however, Plaintiff does not dispute the listed fact for purposes of Defendants' Motion for Summary Judgment or Plaintiff's Cross-Motion for Summary Judgment.

| | |
|---|---|
| Office of Principal Legal Advisor; and the Office of Professional Responsibility ("OPR"). *Id.* ¶ 15. | |
| 12. Each program office is staffed with a point-of-contact ("POC") "who is the primary person responsible for communications between that program office and the ICE FOIA office." *Id.* | Admitted* |
| 13. "Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs in each of those program offices with a copy of the FOIA Request and instructs them to conduct a search for responsive records." *Id.* ¶ 17. | Admitted* |
| 14. "The POCs then review the FOIA request, along with any case-specific instructions provided by the ICE FOIA Office and based on their experience and knowledge of their program office's practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any." *Id.* | Admitted* |
| 15. "ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records, among others. Similarly, ICE employees maintain records in several ways, including storing electronic records on their individual computer hard drives, on their program office's shared drive (if the office uses one) or, less commonly, on DVDs, CDs, or USB storage devices. The determination of which locations need to be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the | Admitted* |

| | |
|---|---|
| employee maintains his/her files." *Id.* ¶ 19. | |
| 16. "Additionally, all ICE employees have access to email. ICE uses the Microsoft Outlook email system. ICE employees use various methods to store their Microsoft Outlook email files. Some archive their files monthly, without separating by subject; others archive their email by topic or by program; and still others create PST files of their emails and store them on their hard drive or shared drive. Like other searches of emails, an employee will complete a search of his email archive when he determines that the archive may contain potentially responsive documents. This determination is based on his knowledge of the substance of the FOIA request, the FOIA tasking and instructions provided to him by ICE FOIA and/or the program office POC, and his knowledge of the method in which he stores his emails." *Id.* ¶ 20. | Admitted* |
| 17. Upon receipt of potentially responsive records from the program office's POC, the ICE FOIA Office assigns a FOIA processor to perform a review and to determine whether the records are, in fact, responsive, and if responsive, whether any redactions should be made pursuant to FOIA or the Privacy Act. *Id.* ¶ 21. | Admitted* |
| 18. "[W]hen an individual passes away while in ICE custody, the ICE Health Service Corps (IHSC), part of ERO, reviews the case to determine whether the detainee received appropriate health services in relation to nationally recognized standards of detention health care and practices. Additionally, ICE OPR […] conducts an objective examination of the facts and circumstances surrounding each | Admitted* |

| | |
|---|---|
| individual's passing, to determine whether or not the relevant detention standards were complied with and to identify any other areas of concern regarding the individual's care and custody." *Id.* ¶ 26. | |
| 19. "Upon receipt and review of [Plaintiff's] FOIA requests and based on its familiarity with ICE records systems, the applicable records disposition schedules, and the substantive and functional mandates and missions of ICE offices, the ICE FOIA Office determined that ERO and/or OPR should be asked to conduct a search responsive to Plaintiff's FOIA Requests, if any. No other offices were tasked because, based on the subject matter of the FOIA requests (i.e., records associated with detainee death review), no other offices were reasonably likely to have responsive records or would reasonably be expected to have responsive records." *Id.* ¶ 27. | Admitted* that the ICE FOIA Office made such determinations regarding which ICE Directorates to search. Denied that no other offices were likely to have responsive records. |
| 20. On May 18, 2021, the ICE FOIA Office forwarded Request One to the OPR. *Id.* ¶ 28. | Admitted* |
| 21. "When OPR receives a FOIA tasking from the ICE FOIA Office, the request is submitted to the OPR FOIA Coordinator who reviews the substance of the FOIA request. Based on their subject matter expertise and knowledge of the program offices' activities within OPR, the OPR FOIA Coordinator forwards the request to specific individuals and/or component offices within OPR to conduct searches of the file systems that in the individuals' judgement, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any." *Id.* ¶ 29. | Admitted* |

| | |
|---|---|
| 22. Upon receipt of Request One, the OPR FOIA Coordinator tasked the OPR External Reviews and Analysis Unit (ERAU) to conduct a search for responsive records. *Id.* | Admitted* |
| 23. Among its various responsibilities, the ERAU performs DDRs, "which are independent, objective examinations of the facts and circumstances surrounding the detention and death of an individual in ICE custody to determine whether the agency and detention facility complied with detention standards related to the individual's health, safety, and security." *Id.* ¶ 30. | Admitted* |
| 24. The Section Chief for OPR ERAU "is responsible for the continual day-to-day operations of their section, to include supervisory responsibilities over all employees assigned to the section and competition of the substantive work of the section." *Id.* ¶ 31. Additionally, the Section Chief for OPR ERAU "is the first-line supervisor of the staff conducting the DDRs." *Id.* | Admitted* |
| 25. Upon being assigned to conduct a search for responsive records pursuant to Request One, the Section Chief for OPR ERAU determined that the locations most likely to contain responsive records were the ERAU SharePoint site, the Unit's shared drive, as well as his computer and Microsoft Outlook. *Id.* ¶ 31. | Admitted* that the Section Chief made such determinations regarding locations to search. Denied to the extent that ICE asserts these were the only locations within OPR ERAU likely to contain responsive records. |
| 26. Accordingly, on May 27, 2021, using the names listed in Request One, the Section Chief for OPR ERAU conducted a search for responsive records in the aforesaid locations; and when the search was completed, he forwarded all responsive records to the OPR FOIA Coordinator. *Id.* ¶ 33. | Admitted* that the Section Chief conducted a search. Denied that the described search identified all records responsive to this FOIA request. |
| 27. "Twelve of the fifteen requested reports were located. The Detainee | Admitted* that twelve out of fifteen reports were located at the referenced time. Denied |

| | |
|---|---|
| Death Report for Oscar Lopez Acosta that was requested by the Plaintiff does not exist as this detainee died while not in ICE custody. Thus, only two of the fifteen reports were not located pursuant to this search." *Id.* n.9. | that because Óscar López Acosta was not in ICE custody at the time of his death, this necessarily means ICE would not have generated or maintained a Detainee Death Report. ICE Directive 11003.5, which details reporting requirements for detainee deaths, applies to all detainee deaths "including but not limited to those occurring . . . post release (when a death occurs within a reasonable time, not to exceed 30 days of release from ICE custody and review is requested by the ICE Director)." *See* Stoneman Decl., Ex. C. Denied that only two of the fifteen reports were not located pursuant to this search. |
| 28. On June 17, 2021, the OPR FOIA Coordinator provided the responsive records to the ICE FOIA Office. *Id.* | Admitted* that the OPR FOIA Coordinator provided records to the ICE FOIA Office. Denied that the provided records constituted all records responsive to this FOIA request. |
| 29. On December 8, 2021, the ICE FOIA Office forwarded Request Four to the ERO and the OPR. *Id.* ¶ 34. | Admitted* |
| 30. "When the ERO receives a FOIA request from the ICE FOIA Office, the request is forwarded to the POC at the ERO Information Disclosure Unit (IDU)," who, after reviewing the request, forward it "to individuals and/or component offices within ERO to conduct searches of the file systems that in the individuals' judgment, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any." *Id.* ¶ 35. | Admitted* |
| 31. Upon receipt and review of Request Four by the ERO IDU POC, the ERO IDU POC "deferred to OPR, as ERO would not be the appropriate directorate to possess or maintain the subject reports, as the reports originate with and are generated by OPR." *Id.* Thus, ERO did not conduct a search or provide any records responsive to Request Four. | Admitted* that the ERO IDU POC made such a determination, did not conduct a search, and provided no responsive records. Denied that ERO IDU was not likely to possess or maintain responsive records. |

| | |
|---|---|
| 32. The Unit Chief for the OPR ERAU "is responsible for managing subordinate Section Chiefs, establishing and ensuring adherence to internal policies, coordinating with ICE and other stakeholders on new/revised polices and other issues, and reporting unit metrics to ICE leadership. The Unit Chief reviews all OPR ERAU work product prior to final distribution." *Id.* ¶ 37. | Admitted* |
| 33. On December 9, 2021, the Unit Chief for the OPR ERAU determined that the ERAU SharePoint site was the most likely location to contain records responsive to Request Four, and accordingly conducted a search for responsive records utilizing the names listed in Request Four. *Id.* ¶ 37. | Admitted* that the Unit Chief made such a determination. Denied that the ERAU SharePoint site was the only likely location to contain responsive records. |
| 34. "Pursuant to this search OPR located all of the Detainee Death Review Reports requested in Request Four." *Id.* n. 10. | Denied, because OPR did not locate and Plaintiff did not receive a Detainee Death Review report for Óscar López Acosta. |
| 35. On December 13, 2021, the Unit Chief for OPR ERAU forwarded all responsive records to the OPR FOIA Coordinator. *Id.* ¶ 38. | Admitted* |
| 36. On September 20, 2022, based upon ongoing discussions with Plaintiff, to potentially resolve any outstanding issues, the Unit Chief for OPR ERAU conducted a supplemental search for responsive records to Request One on the OPR ERAU SharePoint site. *Id.* ¶ 39. This supplemental search yielded two additional records responsive to Request Four. These two additional records were created after the date of the initial records search, and so could not have been captured during the initial records search pursuant to Request One. *Id.* n. 11. | Admitted* |
| 37. On September 27, 2022, the two additional records responsive to Request Four were provided to the ICE FOIA Office. *Id.* | Admitted* |

| | |
|---|---|
| 38. On May 18, 2021, the ICE FOIA Office forwarded Request Two to the OPR and the ERO. *Id.* ¶ 40. | Admitted* |
| 39. Upon receipt and review of Request Two by the ERO IDU POC, the ERO IDU POC "deferred to OPR, as ERO would not be the appropriate directorate to possess or maintain the subject reports, as the reports originate with and are generated by OPR." *Id.* ¶ 41. Thus, ERO did not conduct a search or provide any records responsive to Request Two. | Admitted* that the ERO IDU POC made such a determination, did not conduct a search, and provided no responsive records. Denied that ERO IDU was not likely to possess or maintain responsive records. |
| 40. Upon receipt and review of Request Two by OPR's FOIA Coordinator, the OPR ERAU was tasked with conducting a search for responsive records, because "[a]s part of the DDR process, healthcare and security compliance analyses are completed and incorporated into the final DDR Reports, which are completed by OPR ERAU." *Id.* ¶ 41. | Admitted* |
| 41. On June 3, 2021, using the names of the detainees listed in Request Two, the Unit Chief for OPR ERAU conducted a search for records responsive to Request Two on Unit's SharePoint site and her Microsoft Outlook. | Admitted* that the Unit Chief conducted a search. Denied that all appropriate search terms were used in that search and that the identified locations were the only locations likely to contain responsive records. |
| 42. "All but one of the requested reports were located pursuant to this search. The additional report for Oscar Lopez Acosta that was requested by the Plaintiff does not exist as this detainee died while not in ICE custody. Additionally, three of the reports were in draft form and will be addressed in the Vaughn Index." *Id.* n. 14. | Admitted* that all but one Healthcare and Security Compliance Analysis ("HSCA") report were located by ICE pursuant to this search. Denied that because Óscar López Acosta was not in ICE custody at the time of his death, this necessarily means that ICE would not have generated or maintained a Detainee Death Report. ICE Directive 11003.5, which details reporting requirements for detainee deaths, applies to all detainee deaths "including but not limited to those occurring . . . post release (when a death occurs within a reasonable time, not to exceed 30 days of release from ICE custody and review is requested by the ICE Director)." *See* Stoneman Decl., Ex. C. Denied that only three |

| | |
|---|---|
| | reports were withheld in draft form. *See* Pineiro Decl., Ex. 1 at 19–20 nn.3–24 (ICE's *Vaughn* Index, reflecting twelve HSCA reports withheld in full). |
| 43. After retrieving the aforesaid responsive records, the Unit Chief for OPR ERAU forwarded all responsive records to the OPR FOIA Coordinator. *Id.* ¶ 43. | Admitted* that the Unit Chief forwarded responsive records. Denied that the forwarded records constitute all records responsive to this FOIA request. |
| 44. On June 17, 2021, the OPR FOIA Coordinator provided the responsive records to the ICE FOIA Office. *Id.* ¶ 44. | Admitted* that the OPR FOIA Coordinator provided responsive records to the ICE FOIA Office. Denied that the provided records constitute all records responsive to this FOIA request. |
| 45. Subsequently, on December 8, 2021, the ICE FOIA Office forwarded Request Five to the ERO and the OPR. *Id.* ¶ 45. | Admitted* |
| 46. Upon receipt and review of Request Two by the ERO IDU POC, the ERO IDU POC once again "deferred to OPR, as ERO would not be the appropriate directorate to possess or maintain the subject reports, as the reports originate with and are generated by OPR." *Id.* thus, ERO did not conduct a search or provide any records responsive to Request Five. | Admitted* that the ERO IDU POC made such a determination, did not conduct a search, and provided no responsive records. Denied that ERO IDU was not likely to possess or maintain responsive records. |
| 47. On December 9, 2021, the Unit Chief for OPR ERAU conducted a search for responsive records to Request Five on the ERAU's SharePoint site and her Microsoft Outlook. *Id.* ¶ 46. | Admitted* that the Unit Chief performed such a search. Denied that the identified locations are the only locations likely to contain responsive records. |
| 48. "All of the reports requested by the Plaintiff were located by this search. Eight of the reports were drafts and will be addressed in the Vaughn Index." *Id.* n. 15. | Denied that ICE located all reports requested by Plaintiff. ICE did not locate a report for Óscar López Acosta. Denied that only eight reports were withheld as drafts. *See* Pineiro Decl., Ex. 1 at 19–20 nn.3–24 (ICE *Vaughn* Index, reflecting twelve HSCA reports withheld in full). |
| 49. On December 13, 2021, the OPR FOIA Coordinator provided the responsive records to the ICE FOIA Office. *Id.* | Admitted* that the OPR FOIA Coordinator provided records to the ICE FOIA Office. Denied that the provided records constituted all records responsive to this FOIA request. |
| 50. On September 20, 2022, based upon ongoing discussions with Plaintiff to | Admitted* |

| | |
|---|---|
| potentially resolve any outstanding issues, OPR ERAU Unit Chief conducted a supplemental search for responsive records to Requests One and Four on the OPR ERAU SharePoint site to locate any reports that were previously produced as drafts that may have been finalized since the initial search. No additional records, including any final drafts of the subject reports were located pursuant to this supplemental search. *Id.* ¶ 47. | |
| 51. On December 8, 2021, the ICE FOIA Office forwarded Request Three to the ERO. | Admitted* |
| 52. Upon receipt and review of Request Three by the ERO IDU POC, the ERO IDU POC, "based upon [her] subject matter expertise and the subject matter of Request Three, […] tasked ERO IHSC with a search for responsive records." *Id.* | Admitted* that the ERO IDU POC tasked ERO IHSC with a search. Denied that ERO IHSC was the only location likely to contain responsive records. |
| 53. "ERO IHSC provides medical, dental, and mental health care to persons in ICE custody. IHSC also oversees compliance with detention standards related to healthcare for detainees housed in non-IHSC staffed facilities and also directly supports ICE filed office directors on medical issues." *Id.* ¶ 49. | Admitted* |
| 54. Importantly, the ERO IHSC is the ICE program office which invariably generates the reports that Plaintiff sought in Request Three. *Id.* ¶ 50. | Admitted* as to ERO IHSC's responsibility for generating the reports sought in Request Three. Denied as to Defendants' characterization of this fact as "important." Further denied to the extent Defendants suggest this fact means IHSC is the only location likely to have responsive records. |
| 55. Upon receipt and review of Request Three, the ERO IHSC program coordinator identified the ERO IHSC Medical Quality and Management Unit (MQMU), ERO IHSC Medical Case Management Unit (MCMU), and ERO IHSC Investigations Unit (IIU) | Admitted* that the ERO IHSC program coordinator made such determinations. Denied that these were the only locations likely to contain responsive records. |

| | |
|---|---|
| as being the offices within ERO IHSC most likely to have responsive records to Request Three, should they exist." *Id.* | |
| 56. The ERO IHSC MQMU is responsible for evaluating and reviewing the quality of health care delivery to ICE detainees in ICE custody at ICE IHSC facilities, and conducts event reviews, root cause analysis, and action plans for IHSC staffed facilities. *Id.* ¶ 51. | Admitted* |
| 57. The responsibilities of the Compliance-Healthcare Risk Management Program Manager (HRM) for ERO IHSC MQMU includes "coordinat[ing] risk management activities, e.g., root cause analysis of incidents that occurred in the facilities and provid[ing] proactive risk reduction strategies." *Id.* ¶ 52 | Admitted* |
| 58. On January 26, 2022, using the names listed in Request Three, the ERO IHSC MQMU HRM searched every facility folder and every folder containing event reviews, root cause analysis and action plans on the MQMU SharePoint Site for responsive records. *Id.* ¶ 52 | Admitted* that the ERO IHSC MQMU HRM conducted a search. Denied that all appropriate search terms were used in that search and that the identified locations are the only locations likely to contain responsive records. |
| 59. "A total of six reports were located. Two of the reports were in draft form and will be addressed in the Vaughn Index." *Id.* n. 17. | Admitted* that ICE located six Root Cause Analysis Reports. Denied that only two of the six reports were withheld. Plaintiff identified only three Root Cause Analysis reports in ICE's productions. *See* Stoneman Decl., Ex. G at 3 n.8. |
| 60. After completion of the records search, the ERO IHSC MQMU HRM forwarded the responsive records to the ERO IDU POC. *Id.* ¶ 52 | Admitted* that the ERO IHSC MQMU HRM forwarded records to the ERO IDU POC. Denied that the forwarded records constitute all records responsive to this FOIA request. |
| 61. On March 2, 2022, the ERO IDU POC forwarded the responsive records to the ICE FOIA office. *Id.* | Admitted* that the ERO IDU POC forwarded records to the ICE FOIA office. Denied that the forwarded records constitute all records responsive to this FOIA request. |
| 62. ERO IHSC MCMU coordinates continuity of care and ensures health services for individuals in ICE custody are in accordance with the | Admitted* |

| | |
|---|---|
| ICE Performance Based National Detention Standards (PBNDS) and ICE National Detention Standards (NDS). *Id.* ¶ 53. | |
| 63. ERO IHSC MCMU operations are segmented on a regional basis: more specifically, the Western, Eastern, and Central Regions, each with a specially assigned Field Medical Coordinator (FMC). "The FMC is the individual responsible for, among other things, assisting with the evaluation of compliance with the medical portion of the ICE NDS and PBNDS at local and county detention facilities within their area of responsibility." *Id.* | Admitted* |
| 64. Each of the FMC's for the aforesaid regional branches of MCMU conducted searches on their respective shared drives and Microsoft Outlook folders. No responsive records were located pursuant to Request Three. *Id.* ¶¶ 54 – 56. | Admitted* that such searches were conducted. Denied that appropriate search terms were used in the searches performed by the FMCs and that the identified locations are the only locations likely to contain responsive records. |
| 65. "The ERO IHSC IIU investigates allegations of inappropriate healthcare provided to individuals in ICE custody, investigates incidents or mortality and significant morbidity of individuals in ICE custody, investigates and monitor high risk/high profile incidents, and collaborates with other ICE and IHSC programs to mitigate risks identified during reviews and investigations." *Id.* ¶ 57. | Admitted* |
| 66. Further, "[a]s it pertains to ERO IHSC IIU, that Unit completes and compiles detainee death mortality reviews, not event reviews, root cause analyses or action plans and thus would not have records responsive to Request Five." *Id.* ¶ 61. | Denied that ERO IHSC IIU is not likely to possess records responsive to Plaintiff's FOIA Requests. |
| 67. As such, on February 2, 2022, the ERO IHSC IIC POC "provided a response that the Unit would not have records responsive to the requests, as | Admitted* that such a response was provided and that ERO IHSC IIU did not conduct a search. Denied that ERO IHSC IIU is not |

| | |
|---|---|
| they are not generated by the Unit." *Id.* ¶ 58. Thus, ERO IHSC IIU did not conduct a search or provide any records responsive to the Request. | likely to possess records responsive to Plaintiff's FOIA Requests. |
| 68. On September 20, 2022, and based upon ongoing discussions with Plaintiff to attempt to resolve any outstanding issues ERO IHSC MQMU, ERO IHSC MCMU, and ERO IHSC IIU were re-tasked with a supplemental search for responsive records. *Id.* ¶ 59. While ERO IHSC MQMU's supplemental search yielded duplicative records no additional responsive records were discovered by ERO IHSC MQMU, ERO IHSC MCMU, and ERO IHSC IIU. | Admitted* |
| 69. On December 8, 2021, the ICE FOIA Office forwarded Request Six to the OPR and the ERO. *Id.* ¶ 63. | Admitted* |
| 70. The OPR FOIA Coordinator tasked OPR ERAU with a search for records responsive to Request Six, because "[a]s part of the DDR process, independent autopsies are requested and reviewed by OPR ERAU, incorporated into and attached to the final DDR, when available." *Id.* ¶ 64. | Admitted* |
| 71. On December 9, 2021, the Unit Chief of OPR ERAU conducted a search for independent autopsies responsive to Request Six on the OPR ERAU's SharePoint site. *Id.* ¶ 65. | Admitted* that the Unit Chief conducted a search for records. Denied that the search included all locations likely to contain responsive records. |
| 72. The Unit Chief of OPR ERAU searched the case folders assigned to each of the detainees listed in Request Six. *Id.* | Admitted* |
| 73. "Six of the autopsy reports were not located pursuant to the search. **ICE will note that the independent autopsies are conducted by and originated within the relevant state medical examiners offices**. Additionally, ICE notes that a review of the DDRs for the six autopsy reports that were not located confirms | Admitted* that certain autopsy reports were not located. Denied to the extent that Defendants assert only six out of 12 reports were not located. Plaintiff received only four autopsy reports. *See* Stoneman Decl., Ex. G (Tables 1 and 2). Admitted that autopsy reports are not listed as attachments for certain Detainee Death Review reports but |

| | |
|---|---|
| that ICE did not receive the autopsy reports prior to the public of the final DDRs. The autopsy reports are not listed as attachments to the DDR and in at least one case, a footnote in the DDR states that an autopsy was not completed." *Id.* n. 24 (emphasis added). | denied that such an omission means ICE did not receive the autopsy report. |
| 74. On December 13, 2021, the OPR FOIA Coordinator forwarded records responsive to Request Six to ICE's FOIA Office. *Id.* | Admitted* that the OPR FOIA Coordinator forwarded records to the ICE FOIA office. Denied that the forwarded records constitute all responsive records. |
| 75. On December 8, 2021, and after receipt and review of Request Six, the ERO IDU POC forwarded Request Six to ERO IHSC. Subsequently, the ERO IHSC program coordinator assigned Request Six to ERO IHSC IIU, which "during the course of detainee death investigations, […] may also review any independent autopsies that have been provided by the relevant medical examiners' offices and incorporate the findings into the final Mortality Review Report." *Id.* ¶ 66. | Admitted* |
| 76. On January 4, 2022, using the detainee names listed in Request SIX [sic], an ERO IHSC IIU investigator conducted a search for responsive records in the ERO IHSC IIU SharePoint site and her Microsoft Outlook." *Id.* ¶ 68. | Admitted* that such a search was conducted. Denied that appropriate search terms were used in the search performed by the ERO IHSC IIU investigator and that the identified locations are the only locations likely to contain responsive records. |
| 77. The ERO IHSC IIU investigator was only able to retrieve duplicative records that were already produced by OPR ERAU. *Id.* | Admitted* that the investigator located only duplicative records. Denied that the investigator located all responsive records. |
| 78. As for the independent autopsy reports that were not found, "the ERO IHSC did not have copies due to the coroner not performing an autopsy or the relevant state not responding to the request for a copy." *Id.* | Admitted* that ICE produced to Plaintiff only four independent autopsy reports. *See* Stoneman Decl., Ex. G. Denied that ERO IHSC's inability to locate independent autopsy reports necessarily means the reports were not provided to ICE or maintained in a different location. |
| 79. On December 8, 2022, and based upon ongoing discussions with Plaintiff, ERO was re-tasked with a | Admitted* |

18

| | |
|---|---|
| supplemental search for responsive records. No additional reports were located. *Id.* ¶ 69. | |
| 80. On December 8, 2021, the ICE FOIA Office forwarded Request Seven to the ERO. | Admitted* |
| 81. The ERO IDU POC tasked ERO IHSC, which is the program office within ICE that generates the reports referenced in Request Seven, with a search for responsive records. *Id.* | Admitted* |
| 82. Upon receipt and review of Request Seven, the ERO IHSC program coordinator assigned Request Seven to the ERO IHSC IIU. *Id.* | Admitted* that the request was assigned to ERO IHSC IIU. Denied that this was the only location likely to have responsive records. |
| 83. On January 6, 2022, and using the detainee names listed in Request Seven, an ERO IHSC IIU investigator conducted a search for records responsive to Request Seven on the ERO IHSC IIU SharePoint and her Microsoft Outlook. *Id.* ¶ 73. | Admitted* that such a search was conducted. Denied that appropriate search terms were used in the search performed by the ERO IHSC IIU investigator and that the identified locations are the only locations likely to contain responsive records. |
| 84. Pursuant to this search, "ERO IHSC IIU located eight of the twelve requested reports." *Id.* n. 27. | Admitted* |
| 85. Records responsive to Request Seven were forwarded to the ICE FOIA Office on January 18, 2022. *Id.* | Admitted* |
| 86. On October 6, 2022, based upon ongoing discussions with Plaintiff to attempt to resolve outstanding issues ERO was re-tasked with a supplemental search for additional records responsive to Request Seven. *Id.* ¶ 74. | Admitted* |
| 87. On November 29, 2022, and using the detainee names listed in Request Seven, an ERO IHSC IIU investigator conducted the supplemental search for responsive records on the ERO IHSC IIU SharePoint site and her Microsoft Outlook. *Id.* ¶ 76. | Admitted* |
| 88. Pursuant to the supplemental search, ERO IHSC IIU located the remaining four reports. *Id.* n. 28. Each of the four reports were dated after the initial | Admitted* |

| | |
|---|---|
| search was conducted on January 6, 2022, and thus would not have been captured at the time of that search. *Id*. Moreover, two of the four reports were preliminary reports, which were produced to the Plaintiff, and as of the date of the final search, final reports were not available. *Id*. | |
| 89. On November 29, 2022, the newly located responsive records were forwarded to ICE FOIA Office. *Id*. ¶ 76. | Admitted* |
| 90. Pursuant to FOIA Exemption 3, ICE withheld information that is "covered by non-disclosure statutes and regulations that mandate the confidentiality of the information and that survive the death of the non-citizens at issue." *Id*. ¶ 82. | Admitted that ICE purports to withhold information pursuant to FOIA Exemption 3. Denied to the extent that this statement is an assertion of ICE's legal position, not fact. Plaintiff denies that the records withheld under FOIA Exemption 3 are covered by a nondisclosure statute as contemplated by Exemption 3 and that the withheld material satisfies the criteria of that statute. Plaintiff will address questions of law in its memorandum in opposition to Defendants' motion for summary judgment and in support of Plaintiff's own cross-motion for summary judgment. |
| 91. Additional information elucidating ICE's application of Exemption 3 is provided in ICE's *in camera* and *ex parte* Vaughn Index and Declaration. | Denied. To Plaintiff's knowledge, no such in camera and ex parte *Vaughn* Index or declaration have been filed. *See* Defs.' Mot. for Leave to File Second Decl. and *Vaughn* Index *Ex Parte* and Under Seal ("Motion for Leave") (ECF No. 20) (no indication index or declaration were filed). Furthermore, Defendants withdrew their Motion for Leave to file these materials. *See* Defs.' Notice of Withdrawal (ECF No. 23). |
| 92. Pursuant to FOIA Exemption 5, ICE withheld information pursuant to the deliberative process privilege. *Id*. ¶ 85. | Admitted that ICE purports to withhold information pursuant to FOIA Exemption 5 and the deliberative process privilege. Denied to the extent that this statement is an assertion of ICE's legal position, not fact. Denied that the records withheld under FOIA Exemption 5 are covered by the deliberative process privilege. Plaintiff will address questions of law in its memorandum in opposition to Defendants' motion for summary judgment |

| | and in support of Plaintiff's own cross-motion for summary judgment. |
|---|---|
| 93. Pursuant to FOIA Exemption 5's deliberative process privilege, ICE withheld from disclosure – among other things – "the opinions, edits, comments, conclusions, and recommendations suggested in […] unfinalized draft reports" contained in ICE's draft Healthcare and Security Compliance Analysis reports and Root Cause Analysis and Action Plan reports. *Id*. | Admitted that ICE purports to withhold information pursuant to FOIA Exemption 5 and the deliberative process privilege. Denied to the extent that this statement is an assertion of ICE's legal position, not fact. Denied that Exemption 5 applies to the responsive records. Plaintiff will address questions of law in its memorandum in opposition to Defendants' motion for summary judgment and in support of Plaintiff's own cross-motion for summary judgment. |
| 94. ICE is a law enforcement agency under the purview of DHS. *Id.* ¶ 23. | Admitted, though this statement is an assertion of ICE's legal position, not fact. Plaintiff will address questions of law in its memorandum in opposition to Defendants' motion for summary judgment and in support of Plaintiff's own cross-motion for summary judgment. |
| 95. Plaintiff's FOIA requests sought law enforcement records. *See id.* ¶ 99. | Denied. Whether the requested records were "compiled for a law enforcement purpose" is a legal question, not a fact. Plaintiff will address questions of law in its memorandum in opposition to Defendants' motion for summary judgment and in support of Plaintiff's own cross-motion for summary judgment. |
| 96. Pursuant to FOIA Exemption 7(C), as well as Exemption 6, ICE withheld information "to protect from disclosure information that could reasonably be expected to constitute an unwarranted invasion of privacy" of the survivors of the deceased non-citizens. *Id.* ¶ 116. | Admitted that ICE purports to withhold information pursuant to FOIA Exemption 7(C) and 6. Denied to the extent that this statement is an assertion of ICE's legal position, not fact. However, Plaintiff does not dispute Defendants' application of Exemption 6 and Exemption 7(C) to the responsive records. |
| 97. Additional information elucidating ICE's application of Exemption 7(C) is provided in ICE's *ex parte Vaughn* Index and Declaration. | Denied. To Plaintiff's knowledge, no such in camera and ex parte *Vaughn* Index or declaration have been filed. *See* Defs.' Mot. for Leave to File Second Decl. and *Vaughn* Index *Ex Parte* and Under Seal ("Motion for Leave") (ECF No. 20) (no indication index or declaration were filed). Furthermore, Defendants withdrew their Motion for Leave to file these materials. *See* Defs.' Notice of Withdrawal (ECF No. 23). However, Plaintiff |

| | does not dispute Defendants' application of Exemption 7(C) to the responsive records. |
|---|---|
| 98. Pursuant to FOIA Exemption 7(E), ICE withheld, among other things, information that identified the location of security and surveillance cameras located at law enforcement facilities, as well as internal photographs of the facilities. *Id.* ¶ 103. | Admitted that ICE purports to withhold information pursuant to FOIA Exemption 7(E). Denied to the extent that this statement is an assertion of ICE's legal position, not fact. Denied that Exemption 7(E) applies to the responsive records. Plaintiff will address questions of law in its memorandum in opposition to Defendants' motion for summary judgment and in support of Plaintiff's own cross-motion for summary judgment. |
| 99. Pursuant to FOIA Exemption 7(E), ICE withheld, among other things, information that – if disclosed – could reasonably be expected to risk circumvention of the law, by disclosing techniques and/or procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions. *Id.* ¶ 101. | Admitted that ICE purports to withhold information pursuant to FOIA Exemption 7(E). Denied to the extent that this statement is an assertion of ICE's legal position, not fact. Denied that Exemption 7(E) applies to the responsive records. Plaintiff will address questions of law in its memorandum in opposition to Defendants' motion for summary judgment and in support of Plaintiff's own cross-motion for summary judgment. |
| 100. Pursuant to FOIA Exemption 7(E), ICE withheld, among other things, information pertaining to staffing numbers, staffing shortages, and potential security vulnerabilities based on staffing at relevant ICE detention facilities. *Id.* ¶ 104. | Admitted that ICE purports to withhold information pursuant to FOIA Exemption 7(E). Denied to the extent that this statement is an assertion of ICE's legal position, not fact. Denied that Exemption 7(E) applies to the responsive records. Plaintiff will address questions of law in its memorandum in opposition to Defendants' motion for summary judgment and in support of Plaintiff's own cross-motion for summary judgment. |
| 101. Pursuant to FOIA Exemption 7(E), ICE withheld, among other things, information pertaining to internal security and internal security vulnerabilities at the relevant ICE detention facilities, including specifics on security features utilized by the relevant detention facilities, specific times of security rounds, [and] specific times that head counts are conducted." *Id.* ¶ 105. | Admitted that ICE purports to withhold information pursuant to FOIA Exemption 7(E). Denied to the extent that this statement is an assertion of ICE's legal position, not fact. Denied that Exemption 7(E) applies to the responsive records. Plaintiff will address questions of law in its memorandum in opposition to Defendants' motion for summary judgment and in support of Plaintiff's own cross-motion for summary judgment. |

| | |
|---|---|
| 102.     Pursuant to FOIA Exemption 7(E), ICE withheld, among other things, information "pertaining to the layout of the facilities, location of cells, what is located where within the facilities, location of security observation points, and location of guard stations." *Id.* ¶ 107. | Admitted that ICE purports to withhold information pursuant to FOIA Exemption 7(E). Denied to the extent this statement is an assertion of ICE's legal position, not fact. Denied that Exemption 7(E) applies to the responsive records. Plaintiff will address questions of law in its memorandum in opposition to Defendants' motion for summary judgment and in support of Plaintiff's own cross-motion for summary judgment. |
| 103.     ICE carefully reviewed the responsive records on a line-by-line and page-by-page basis to identify reasonably segregable, non-exempt information to ensure that all such information was released. *Id.* ¶ 124. | Denied that ICE released all segregable, non-exempt information to Plaintiff. |
| 104.     ICE determined that all information withheld either was exempt from disclosure pursuant to a FOIA exemption or was so intertwined with protected material that segregation was not possible without revealing the underlying protected material. *Id.* ¶ 125. | Denied that all segregable, non-exempt information was released to Plaintiff. Denied to the extent this statement is an assertion of ICE's legal position, not fact. Plaintiff will address questions of law in its memorandum in opposition to Defendants' motion for summary judgment and in support of Plaintiff's own cross-motion for summary judgment. |
| 105.     ICE produced all the segregable, non-exempt information in the requested records, including the factual material that was presented in these records. *Id.* ¶ 126. | Denied that all segregable, non-exempt information was released to Plaintiff. |

**Plaintiff's Statement of Additional Material Facts**

1. ICE Directive 11003.5: Notification, Review, and Reporting Requirements for Detainee Deaths ("Directive 11003.5") requires the ICE Office of Public Affairs to "timely post an interim notice of [any] detainee death to ICE's public-facing website" within 48 hours, or "as quickly as is reasonably possible." Decl. of Taylor Stoneman in Supp. of Pl.'s Cross-Mot. for Summ. J. and in Opp'n to Defs.' Mot. for Summ. J. ("Stoneman Decl."), Ex. C ¶ 5.1(3)(c).

2. Directive 11003.5 instructs that, "[n]o later than 180 days following a detainee['s] death," "[a]bsent exceptional circumstances, OPR should complete the OPR Detainee Death Review and provide it to the Deputy Director of ICE, [Executive Associate Director] for ERO, A[ssistant] D[irector] for C[ustody] M[anagement], OPLA, DHS [Office of Civil Rights and Civil Liberties], and [the DHS Office of the Immigration Detention Ombudsman]." Stoneman Decl., Ex. C ¶ 5.1(7)(b).

3. News Releases posted by ICE can be accessed on the page of ICE's website titled "News Releases and Statements," available at https://www.ice.gov/newsroom. Stoneman Decl. ¶ 2. By filtering according to the topic "Detainee Death Notifications," a viewer can access news releases related to individuals who have died in ICE custody. *Id.*

4. At the time of the filing of Plaintiff's Cross-Motion for Summary Judgment, news releases referencing all but four of the 38 individuals listed in Plaintiff's FOIA Requests were available on ICE's website. *Id.* ¶ 4.

5. 24 of the 34 available news releases related to the individuals listed in Plaintiff's FOIA requests state that ICE's Office of the Principal Legal Advisor ("OPLA") would be among the directorates conducting reviews of the detainee's death. *See generally* Stoneman Decl., Ex. A.

6. Each of ICE's news releases referencing OPLA contained a version of one of the following statements:

   a. "This agency's comprehensive review will be conducted by ICE senior leadership to include Enforcement and Removal Operations, the Office of Professional Responsibility and the Office of the Principal Legal Advisor." *See* Stoneman Decl., Ex. A at 10–11 (Wilfredo Padron); *id.* at 14–15 (Guerman Volkov); *id.* at 20–22 (Pedro Arriago-Santoya); *id.* at 23–24 (Roberto Rodriguez-Espinoza); *id.* at 25–26

(Nebane Abienwi); *id.* at 27–28 (Roylan Hernandez-Diaz); *id.* at 29–30 (Anthony Aluseye Akinyemi); *id.* at 33–34 (Ben James Owen); *id.* at 35–36 (David Hernandez-Colula).

b. "The agency's comprehensive review will be conducted by ICE senior leadership, including Enforcement and Removal Operations (ERO) and the Office of the Principal Legal Advisor (OPLA)." *See* Stoneman Decl., Ex. A at 37–38 (Maria Celeste Ochoa-Yoc De Ramirez); *id.* at 39–40 (Ramiro Hernandez-Ibarra); *id.* at 43–44 (Choung Woong Ahn); *id.* at 45–46 (Santiago Baten-Oxlaj); *id.* at 50–51 (Luis Sanchez-Perez); *id.* at 57–58 (Jose Freddy Guillen-Vega); *id.* at 65–66 (Anthony Jones); *id.* at 71–72 (Diego Fernando Gallego Agudelo). *See also id.* at 41–42, 47–48, 52–56, 59–64 (news releases for Carlos Ernesto Escobar-Mejia, Onoval Perez-Montufa, James Thomas Hill, Kuan Hui Lee, Fernando Sabonger-Garcia, Cipriano Chavez-Alvarez, Romien Jally (similar language)).

7. Two news releases referenced investigations without detailing the ICE directorates involved: "ICE is firmly committed to the health and welfare of all those in its custody and is undertaking a comprehensive, agency-wide review of this incident, as it does following all deaths in custody." *See* Stoneman Decl., Ex. A at 67–70 (news releases for Felipe Montes and Jesse Jermone Dean Jr.).

8. Each of the eight remaining relevant news releases references a review of the deceased individual's death but does not contain any description of which ICE directorates would conduct such a review. *See* Stoneman Decl., Ex. A at 2–9, 12–13, 16–19, 31–32 (news releases for Gourgen Mirimanian, Roxsana Hernandez, Huy Chi Tran, Augustina Ramirez-Arreola, Mergensana Amar, Abel Reyes-Clemente, Simratpal Singh, Samuelino Mavinga).

9.  After ICE made its first production of responsive records, Plaintiff asked ICE to search OPLA for records. Stoneman Decl. ¶ 5; *Id.*, Ex. B. ICE responded by email that "OPLA is not a proper custodian and has not been searched," but did not explain why OPLA was not a proper custodian. *Id.*

10. ICE's Performance-Based National Detention Standards were last revised in 2016. *See* U.S. Immigration and Customs Enforcement, *ICE Detention Standards* (fact sheet last updated Feb. 24, 2023), https://www.ice.gov/factsheets/facilities-pbnds; Stoneman Decl., Ex. D at 2.

11. Plaintiff received from ICE twenty-six of twenty-seven requested Detainee Death Review reports. Stoneman Decl., Ex. G.

12. Plaintiff received from ICE twenty-four of twenty-five requested Healthcare and Security Compliance Analysis ("HSCA") reports. *Id.* Twelve of the HSCA reports located by ICE were withheld in full. *Id.*

13. Plaintiff received from ICE six of thirty-eight requested ICE Health Service Corps Event Review, Root Cause Analysis, or Action Plan reports. *Id.*

14. Plaintiff received from ICE four of twelve requested independent autopsy reports. *Id.*

15. Plaintiff received from ICE all twelve requested Mortality Review reports. *Id.*


Dated: April 7, 2023                                          Respectfully submitted,

                                                             */s/ Taylor Stoneman*
                                                             Taylor Stoneman
                                                             D.C. Bar No. 888155721
                                                             AMERICAN OVERSIGHT
                                                             1030 15th Street NW, B255
                                                             Washington, DC 20005
                                                             (202) 848-1319
                                                             taylor.stoneman@americanoversight.org

                                                             *Counsel for Plaintiff*