# Exhibit C

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**

**ICE Directive 11003.5:** Notification, Review, and Reporting Requirements for Detainee Deaths

        **Issue Date:** October 25, 2021
        **Superseded:** ICE Directive 11003.4: *Notification, Review, and Reporting Requirements for Detainee Deaths*, (Dec. 2, 2020).
        **Federal Enterprise Architecture Number:** 306-112-002b

1. **Purpose/Background.** This Directive governs the initial notification, review, and ongoing reporting about the death of an individual in the custody of U.S. Immigration and Customs Enforcement (ICE). The Directive provides ICE personnel with procedures for notifying ICE Directorates and Program Offices, U.S. Department of Homeland Security (DHS) Headquarters, a detainee's next of kin, appropriate consulate, Congress, and the public about such a death. This Directive applies to all detainee deaths, including but not limited to those occurring in a detention facility, medical facility, holding room, in transit between facilities, or post release (when a death occurs within a reasonable time, not to exceed 30 days of release from ICE custody and review is requested by the ICE Director).

2. **Policy.** It is ICE policy, to the extent possible, to notify relevant parties and report the death of any detainee timely, accurately, appropriately, and with sufficient detail. ICE will ensure notification to the next of kin, appropriate consulate, relevant DHS and ICE stakeholders, Congress, and the public about each detainee death according to the requirements established by this Directive. Appropriate Headquarters Responsible Officials (HROs) must approve all notifications to Congress and the public. Nothing in this Directive prohibits ICE HROs or their designees from providing additional notifications of a detainee death if ICE determines it is appropriate to do so. ICE will make reasonable efforts to ensure notification of a detainee's next of kin prior to notifying other external entities.

    ICE will conduct the required medical, oversight, and compliance reviews and investigations following the death of a detainee in ICE custody. ICE will timely prepare and retain reports based on the findings of reviews or investigations and share them with appropriate entities in accordance with this Directive and all other applicable ICE policies and record schedules.

3. **Definitions.** The following definitions apply for purposes of this Directive only.

3.1. **HROs.** Executive Associate Directors (EADs) for Enforcement and Removal Operations (ERO), Homeland Security Investigations (HSI), and Management and Administration (M&A); the Principal Legal Advisor (PLA); the Associate Director for the Office of Professional Responsibility (OPR); and the Assistant Directors (ADs), or equivalent positions who report directly to the Director, Deputy Director, or Chief of Staff, including the AD for the Office of Congressional Relations (OCR), the AD for the Office of

Immigration Program Evaluation (OIPE), and the AD for the Office of Public Affairs (OPA).

**3.2.** **Detainee Death Report.** Publicly available document, detailing relevant information and circumstances regarding any detainee death, in accordance with congressional reporting mandates.

**3.3.** **ICE Health Service Corps (IHSC) Mortality Review.** Evaluation of a deceased detainee's medical history and clinical care provided to the detainee to ascertain both cause of death, and whether changes to ICE policies, procedures, or practices are warranted; to provide recommendations for follow up actions; and to identify issues that require further study. This definition includes any detainee whose death was post release (when a death occurs within a reasonable time, not to exceed 30 days of release from ICE custody and review is requested by the ICE Director). A Mortality Review consists of an administrative review, a clinical review, and in the event of a suicide, a psychological autopsy.

**3.4.** **Interim Notice of a Detainee Death.** An objective statement announcing the death of a detainee in ICE custody, as well as additional facts, circumstances, and information relevant to the particular death at issue, that is timely posted to ICE's public-facing website.

**3.5.** **OPR Detainee Death Review.** An objective examination of the facts and circumstances surrounding the detention and death of an individual in ICE custody or post release (when a death occurs within a reasonable time, not to exceed 30 days of release from ICE custody and review is requested by the ICE Director), to determine whether or not the deceased detainee received treatment in accordance with applicable detention standards on health, safety, and security.

**4.** **Responsibilities.**

**4.1.** The **HROs** are responsible for ensuring compliance with this Directive within their Directorate and Program Offices.

**4.2.** The **EAD for ERO and the Associate Director for OPR** are responsible for:

1) Notification to relevant HROs and other entities, as appropriate; and

2) Ensuring timely completion of required reports and compliance with recordkeeping and documentation requirements, to include ensuring that all reports are provided to the appropriate program offices.

**4.3.** The **ERO Field Office Directors (FODs)** are responsible for:

1) Notification, through the appropriate supervisory channels, to the EAD for ERO;

2) Issuing a condolence letter to a detainee's next of kin, if their contact information is readily available or known; and

3) Collecting available records, documents, information, videos, and any other evidence related to the deceased, and sending the materials to the AD for Custody Management (CM).

**4.4.** The **ERO AD for Custody Management** is responsible for:

1) Notification to the EAD for ERO, the Associate Director for OPR, and other entities, as appropriate;

2) Maintaining documents collected by the FOD or OPR Special Agent in Charge related to the death for investigative entities;

3) Ensuring timely completion of the Detainee Death Report and compliance with quarterly and annual reporting requirements; and

4) Coordinating public posting of the Detainee Death Report and interim notice of a detainee death with the OPA on ICE's public-facing website.

**4.5.** The **AD for IHSC** is responsible for:

1) Notification to the EAD for ERO, the AD for Custody Management, the AD for OPR, and other entities, as appropriate;

2) Collecting available medical records related to the death; and

3) Initiating, completing, and archiving the IHSC Mortality Review.

**4.6.** **OPR** is responsible for:

1) Notification, through the appropriate supervisory channels, to the Associate Director for OPR; and

2) Initiating, completing, and archiving the OPR Detainee Death Review.

**4.7.** **Office of Congressional Relations (OCR)** is responsible for providing notice to all committees of jurisdiction of the posting of any interim notice of a detainee death and/or Detainee Death Report on ICE's public-facing website.

**4.8.** **Office of Public Affairs (OPA)** is responsible for working with relevant HROs to ensure the timely posting of any interim notice of a detainee death or Detainee Death Report on ICE's public-facing website.

**4.9.** **Office of Information Governance and Policy (IGP)** is responsible for reviewing and clearing the public release of information regarding the detainee death.

**5.** **Procedures.**

**5.1.** **Notification, Documentation, and Reporting.**

1) <u>Within 12 hours following a detainee death</u>:

   a) The FOD in the area of responsibility (AOR) where the death occurred must notify the ERO EAD through the chain of command, their respective Deputy AD for Domestic Operations, the AD for Field Operations, ERO AD for CM, the Joint Intake Center (JIC), and the local Office of the Principal Legal Advisor (OPLA) field location;

   b) The ERO EAD will provide all available information to the Office of the Director; and

   c) OPR AD must notify the DHS Office of the Inspector General (OIG).

2) <u>No later than 24 hours following a detainee death</u>:

   a) The FOD in the AOR where the death occurred must provide email, telephonic, or in-person notification to:

      i) The appropriate state agency(ies), as necessary;

      ii) The local ICE public affairs officer;

      iii) IHSC (if the death did not occur in an IHSC-staffed facility); and

      iv) The ICE Records Officer.

   b) The FOD in the AOR where the death occurred must create a "Significant Incident Report" (SIR) for the Joint Intelligence Operations Center using the electronic ICE Significant Event Notification (SEN) system;[1] and

   c) The ERO EAD must ensure the ICE Director, Deputy Director, EAD of M&A, Assistant Director of OCR, Assistant Director of OPA, Assistant Director of OIPE, Associate Director of OPR, Principal Legal Advisor, ERO Assistant Directors, DHS Office of Civil Rights and Civil Liberties (CRCL), DHS Office of the Immigration Detention Ombudsman (OIDO), and the JIC are notified.

3) <u>No later than 48 hours following a detainee death</u>:

   a) The ERO AD for CM must ensure all necessary documents and materials are provided to IHSC to initiate a Mortality Review;

   b) The FOD will ensure the local OPLA field location is informed of the death for the purpose of notification to the detainee's attorney(s), the immigration court,

---

[1] *See* ICE Directive 14011.1, *Reporting Guidelines for Significant Incident Reports (SIRs) and Significant Prospective Enforcement Activity Reports (SPEARs)* (Aug. 16, 2010), or as updated.

and federal courts, as appropriate; and

c) OPA will timely post an interim notice of the detainee death to ICE's public-facing website. While this posting should be accomplished within 48 hours, every effort should be made to post the interim notice as quickly as is reasonably possible.

4) <u>No later than 14 calendar days following a detainee death</u>:

   a) The AD for IHSC must:

      i) Provide a copy of all Medical Payment Authorization Requests (MedPARs) or any other similar authorization(s), a copy of the death certificate, and all other relevant records, to appropriate entities as needed to complete a Mortality Review; and

      ii) Ensure the Preliminary Mortality Review is completed and provided to OPR (and OIG, as appropriate), and the HROs.

   b) The ERO EAD must ensure that copies of all available medical reports and records, detention records, facility policies, all available video footage, and all other relevant evidence are provided to OPR.

5) <u>No later than 30 calendar days following a detainee death</u>:

   a) The ADs for CM and IHSC shall provide all documents and evidence relevant to the detainee's death to the OIG, as appropriate; and

   b) The AD for IHSC must ensure the Mortality Review is completed.

6) <u>No later than 60 calendar days following a detainee death</u>:

   a) The AD for IHSC must ensure the Mortality Review is completed and distributed to the relevant offices, as appropriate.

7) <u>No later than 180 days following a detainee death</u>:

   a) The AD for IHSC must distribute the autopsy and toxicology results, as appropriate; and

   b) Absent exceptional circumstances, OPR should complete the OPR Detainee Death Review and provide it to the Deputy Director of ICE, EAD for ERO, AD for CM, OPLA, DHS CRCL, and OIDO. In cases where OPR is unable to timely complete the OPR Detainee Death Review, it must provide the Deputy Director of ICE with an update regarding the status of the OPR Detainee Death Review on day 180 following a detainee death, and every 120 days thereafter until it is completed.

**5.2. Notification to Consulate and Detainee's Next of Kin.**

1) As soon as possible, but no later than 24 hours following a detainee death:

   a) The FOD must coordinate with the appropriate consulate to notify the detainee's next of kin, if their information is known or readily available and document the notification and acknowledgment, as applicable, in the ENFORCE Alien Removal Module (EARM) system, and any successor system, in addition to the Alien File (A-File); and

   b) If consular officials are unable or indicate unwillingness to notify the next of kin, the FOD must make every effort to attempt to telephonically notify the person named as the next of kin in ICE records of the detainee's death. The notification will take place in a language the next of kin can understand, using an interpreter whenever necessary. If a detainee's next of kin is not located, the FOD will make all reasonable efforts to notify any member of the detainee's extended family.

2) No later than 48 hours of the next of kin being notified: The FOD or Removal Division Deputy Assistant Directors (for detainees possessing nationality in countries identified as "Headquarters-only" for removal case management purposes) must send a condolence letter to the next of kin (see attached template), to the applicable consulate, and document the letter in EARM, and any successor system, in addition to the A-File.

**5.3. Notification to Congress and the Public and Preparation of Statements in Response to Press Inquiries.**

1) As soon as practicable following notification of a detainee death, OPA will draft a holding statement in preparation for response to inquiries and provide to OCR and OPE.

2) OPA will work with other HROs to timely prepare and post an interim notice of a detainee death to ICE's public-facing website. The interim notice should not be posted until after the next of kin and consulate have been notified or reasonable attempts to notify the next of kin and consulate have been made.

   The interim notice of a detainee death must provide objective information regarding the facts and circumstances surrounding the death and the events that brought the noncitizen into ICE custody. ICE will be transparent in providing information to the public regarding a detainee death. At a minimum, the interim notice of a detainee death must include:

   a) Information regarding the noncitizen's most recent admission or entry into the United States, the circumstances that brought him or her into ICE custody, the charges of removal lodged against him or her, and whether the noncitizen is subject to a final order of removal. To the extent that the noncitizen is subject to one or more criminal grounds of removability, the interim notice should provide basic information regarding conviction(s) supporting such charges of removal;

    b) Information regarding any pre-existing medical condition(s) the noncitizen had at the time he or she came into ICE custody, or medical condition(s) identified while in custody if relevant to the particular death at issue; and

    c) The notice should provide contextual information, as appropriate, regarding ICE's medical care, detention standards, or other standards, policies, or procedures that are reasonably related to the particular death at issue. This may include, but is not limited to:

        i) That ICE policy requires all detainees receive an initial health screening upon arrival at a detention facility to determine appropriate medical, mental health, or dental treatment that is needed; and

        ii) That ICE policy requires a subsequent evaluation to identify medical conditions requiring monitoring or treatment, and that detainees with a medical condition requiring follow-up treatment will be scheduled for as many medical appointments as needed, including to outside medical providers or facilities if necessary.

3) OCR will provide notice to all committees of jurisdiction of the posting of the interim notice of the detainee death on ICE's public-facing website. In instances where the next of kin have not been notified, this notice must include information that efforts to reach next of kin are ongoing.

4) <u>No later than 30 days of the detainee death</u>: The AD for CM must ensure the Detainee Death Report is completed and made available on the ICE public facing website.

5) <u>No later than 60 days of the detainee death</u>: Absent extenuating circumstances and with the exception of toxicology and autopsy reporting, all reporting must be completed and released as appropriate.

### 5.4. Detainee Death Reporting Requirements.

1) The AD for CM will maintain an accurate and up-to-date list of all Detainee Death Reports for each fiscal year. The report will:

    a) Be consistent with Congressional requirements; and

    b) Include the detainee's name, A-Number, date of death, location at time of death, cause of death (pre-existing condition(s), natural causes, suicide, homicide, accidental overdose, etc.), and a summary as to the numerical context of the death with regard to ICE's overall detained population.

2) On a quarterly annual basis, the AD for CM will provide all appropriate DHS offices and HROs with a copy of an updated list of Detainee Death Reports.

3) In its discretion and consistent with this Directive, the Director may request OPR and IHSC review the care received in ICE custody for detainees who die within a

reasonable time, a period not to exceed 30 days of their release from ICE custody.

**6.0** **Recordkeeping.** All relevant documents produced or provided in accordance with this Directive must be maintained in accordance with a National Archives and Records Administration (NARA) approved retention schedule. Detainee Death Review Files and Detainee Death Reports must be retained in accordance with ICE records schedule DAA-0567-2015-0013, or any NARA approved schedule that supersedes DAA-0567-2015-0013. If the records are not subject to a records schedule, they must be maintained indefinitely by the agency. In the event the records are subject to a litigation hold, they may not be disposed of under a records schedule until further notification.

**7.** **Authorities/References.**

**7.1.** 2020 Family Residential Standards 4.7, *Terminal Illness, Advance Directives, and Death.*

**7.2.** 2019 National Detention Standard 4.6, *Terminal Illness, Advanced Directives, and Death.*

**7.3.** 2011 Performance-Based National Detention Standard 4.7, *Terminal Illness, Advanced Directives, and Death* (rev'd 2016).

**7.4.** 2008 Performance-Based National Detention Standard Part 4, Section 25, *Terminal Illness, Advanced Directives, and Death.*

**7.5.** 2000 Detention Operations Manual, Health Services, *Terminal Illness, Advanced Directives, and Death.*

**7.6.** DHS Management Directive 0810.1, *The Office of the Inspector General*, Appendix A, (June 10, 2004), or as updated.

**7.7.** DHS Instruction 248-01-001, *Medical Quality Management* (Sept. 10, 2012), or as updated.

**7.8.** House Report 116-180, to accompany H.R. 3931, Department of Homeland Security Appropriations Act, 2020 (July 24, 2019).

**7.9.** Senate Report 116-125, to accompany S. 2582, Department of Homeland Security Appropriations Bill, 2020 (Sept. 26, 2019).

**7.10.** ICE Directive 14011.1: *Reporting Guidelines for Significant Incident Reports (SIRs) and Significant Prospective Enforcement Activity Reports (SPEARs)* (Aug. 16, 2010), or as updated.

**8.** **Attachments.**

**8.1.** Condolence Letter Template

**9.** **No Private Right Statement.** This Directive is an internal policy statement of ICE. It may be modified, rescinded, or superseded at any time without notice. It is not intended

to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

Tae D. Johnson
Acting Director
**U.S. Immigration and Customs Enforcement**