UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 21-3030 (TNM) |
| | ) |
| U.S. DEPARTMENT OF HOMELAND | ) |
| SECURITY, *et al*., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

   ICE CONDUCTED AN ADEQUATE SEARCH FOR RESPONSIVE RECORDS ................. 1

      ICE Reasonably Identified All Directorates Likely To Possess Responsive Records ........... 2

      ICE Reasonably Identified and Searched All Offices And File Systems Where Records
      Were Likely To Be Found ............................................................................................ 4

      ICE ERO IHSC Employed Reasonable Search Terms to Identify Records .......................... 7

   ICE'S WITHHOLDINGS ARE SUPPORTED BY LAW ....................................................... 8

      ICE Has Justified Withholding Records Pursuant To Exemption 5 ...................................... 8

      ICE's Withholdings Pursuant to Exemption 7(E) Related To Investigative Records Produced
      For Law Enforcement Purposes ................................................................................... 15

   ICE PERFORMED AN ADEQUATE SEGREGABILITY ANALYSIS................................. 18

CONCLUSION ..................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

Cases

*Abtew v. U.S. Department of Homeland Sec.*,
  808 F.3d 895 (D.C. Cir. 2015) ................................................................................. 9
*Advancement Project v. U.S. Department of Homeland Security*,
  549 F.Supp.3d 128 (D.D.C., 2021) .......................................................................... 14
*Am. Oversight v. Off. Of Mgmt & Budget*,
  613 F. Supp. 3d 219 (D.D.C. 2022) .......................................................................... 5
*Am. Oversight v. U.S. Gen. Servs. Admin.*,
  486 F. Supp. 3d 306 (D.D.C. 2020) .......................................................................... 5
*American Civil Liberties Union v. U.S. Dept. of Homeland Sec.*,
  738 F.Supp.2d 93 (D.D.C., 2010) ...................................................................... 14, 15
*Arab American Institute v. Office of Management and Budget*,
  No. 18-0871, 2020 WL 4698098 (D.D.C., 2020) .................................................... 10
*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011) ................................................................................... 14
*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ..................................................................... 9, 10, 13
*Rep. Comm. for Freedom of the Press v. FBI*,
  3 F.4th 350 (D.C. Cir. 2021) ................................................................................... 12
*Competitive Enterprise Institute v. United States Environmental Protection Agency*,
  12 F.Supp.3d 100 (D.D.C., 2014) ............................................................................ 17
*Crooker v. State Dep't*,
  628 F.2d 9 (D.C. Cir. 1980) ................................................................................. 4, 5
*Citizens for Resp. & Ethics in Wash. v. Dep't of Labor*,
  478 F. Supp. 2d 77 (D.D.C. 2007) ........................................................................... 17
*DiBacco v. U.S. Army*,
  795 F.3d 178 (D.C. Cir. 2015) ............................................................................. 5, 6
*Frontier Found. v. DOJ*,
  739 F.3d 1 (D.C. Cir. 2014) ..................................................................................... 10
*Greenberg v. Dep't of Treasury*,
  10 F. Supp. 2d 3 (D.D.C. 1998) ........................................................................ 2, 3, 4
*Hall v. Dep't of Justice*,
  63 F. Supp. 2d 14 (D.D.C. 1999) .............................................................................. 2
*Horowitz v. Peace Corps*,
  428 F.3d 271 (D.C. Cir. 2005) ................................................................................. 10
*Jett v. FBI*,
  139 F.Supp.3d 352 (D.D.C. 2015) ............................................................................ 4
*Judicial Watch v. Rossotti*,
  285 F. Supp. 2d 17 (D.D.C. 2003) ............................................................................ 2
*Machado Amadis v. Dep't of State*,
  971 F.3d 364 (D.C. Cir. 2020) ................................................................................... 9
*Mayer Brown LLP v. IRS*,
  562 F.3d 1190 (D.C. Cir. 2009) ............................................................................... 14

*Mead Data Central, Inc. v. U.S. Dept. of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ............................................................................ 17
*Milner v. Department of the Navy*,
   562 U.S. 565 (2011) ........................................................................................... 14
*National Immigration Project of National Lawyers Guild v. ICE*,
   2020 WL 5798429 (D.D.C., 2020)...................................................................... 13
*Nuclear Regulatory Comm'n*,
   216 F. 3d 1180 (D.C. Cir. 2000) ........................................................................ 16
*Oglesby v. Dep't of the Army*,
   920 F.2d 57 (D.C. Cir. 1990) ............................................................................... 2
*Petroleum Info. Corp. v. U.S. Dep't of the Interior*,
   976 F.2d 1429 (D.C. Cir. 1992) ......................................................................... 10
*Pratt v. Webster*,
   673 F. 2d 408 (D.C. Cir. 1982) .......................................................................... 15
*Quarles v. Dep't of the Navy*,
   893 F.2d 390 (D.C. Cir. 1990) ........................................................................... 10
*Renegotiation Bd. v. Grumman Aircraft*,
   421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975) ......................................... 10
*Rosenberg v. U.S. Department of Defense*,
   442 F.Supp.3d 240 (D.D.C., 2020) .................................................................... 12
*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ........................................................................... 2
*Steinberg v. Dep't of Justice*,
   23 F.3d 548 (D.C. Cir. 1994) ............................................................................... 2
*Tax Analysts v. IRS*,
   294 F.3d 71 (D.C.Cir.2002) ............................................................................... 14
*U.S. Section, International Boundary and Water Com'n, U.S.-Mexico*,
   740 F.3d 195 (D.C. Cir. 2014) ........................................................................... 14
*Weisberg v. Dep't of Justice*,
   705 F.2d 1344 (D.C. Cir. 1983) ........................................................................... 1
*Wildlife v. Dep't of Interior*,
   314 F.Supp.2d 1 (D.D.C. 2004) ........................................................................... 4

**Statutes**

5 U.S.C. § 552(b)(7)(E) .......................................................................................... 14
8 U.S.C. § 1103 ..........................................................................................iii, 15, 16

## INTRODUCTION

By and through undersigned counsel, Defendants U.S. Department of Homeland Security (the "Department") and the Immigration and Customs Service ("ICE"), respectfully submit this combined reply in further support of their motion for summary judgment (ECF No. 21, "Motion"), and opposition to Plaintiff's cross-motion (ECF No. 25, "Response").

Plaintiff's Response argues that ICE's searches were inadequate and that ICE has improperly invoked FOIA Exemptions 5 and 7(E).[1]  For the reasons described below, Plaintiff is incorrect.

## ARGUMENT

## I.   ICE CONDUCTED AN ADEQUATE SEARCH FOR RESPONSIVE RECORDS

Under the FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); see *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."). A search is not inadequate merely because it failed to "uncover[] every document extant," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991), and "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured." *Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003). Rather, a search is inadequate only if the agency fails to "show, with reasonable detail, that the

---

[1]     In Defendants' Motion, ICE's Exemption 3 withholdings were simultaneously asserted with its Exemption 6 and 7(C) withholdings. Pineiro Decl. ¶¶ 80, 116; *Vaughn* at 8–9. As Plaintiff has not challenged ICE's Exemption 6 and 7(C) withholdings in its Response, Defendants will not brief its Exemption 3 withholdings for the purposes of the instant filing.

search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68.

An agency, moreover, is not required to examine "virtually every document in its files" to locate responsive records. *Steinberg v. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994); *see also Hall v. Dep't of Just.*, 63 F. Supp. 2d 14, 17-18 (D.D.C. 1999) (finding that agency need not search for records concerning subject's husband even though such records may have also included references to subject). Instead, it is appropriate for an agency to search for responsive records in accordance with the manner in which its records are maintained. *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

Here, Plaintiff contends that ICE's search was inadequate because ICE purportedly failed to search all program offices likely to contain responsive materials and failed to employ search terms and methods likely to locate all relevant records. For the reasons stated below, however, those arguments are misplaced. Accordingly, Defendants respectfully request summary judgment with respect to the adequacy of ICE's search in this case.

### A.   ICE Reasonably Identified All Directorates Likely to Possess Responsive Records

Plaintiff argues that ICE failed to complete an adequate search because it only tasked two directorates—i.e., ICE's Office of Professional Responsibility and Enforcement and Removal Operations (the "Relevant Directorates")—with conducting searches for records responsive to Plaintiff's FOIA requests. Pl.'s Resp. at 9–12.  In making this contention, Plaintiff primarily relies upon the Pineiro Declaration , which states that upon the completion of the Relevant Directorates' reports regarding the health care services provided to individuals who die in ICE custody, "the results of these reports are provided to ICE senior management[.]" *Id*. at 10 (citing Pineiro Decl. ¶ 26.) Additionally, Plaintiff cites to an ICE press release indicating that a "'comprehensive

review' of the circumstances of each" of the deaths of 24 out of the 38 individuals named in Plaintiff's FOIA requests "'will be conducted by'" ICE's Office of the Principal Legal Advisor. Pl.'s Resp. at 10–11. Finally, in a footnote, Plaintiff also purports that ICE's Directive 11003.5 requires that certain of the reports produced during the Detainee Death Review process "be provided to [the Office of the Principal Legal Advisor], among other offices upon completion." *Id*. at n.12.[2] On these grounds, Plaintiff contends that ICE improperly declined to task "ICE leadership" or the Office of the Principal Legal Advisor with conducting a search for responsive records. *Id*. at 11.

Here, Plaintiff not only misunderstands ICE's Detainee Death Review process, but also incompletely applies the controlling law to its aforesaid misconceptions. As ICE has explicitly clarified in its Supplemental Declaration, Relevant Directorates "are the two main offices involved in the Detainee Death Review process, [and] who initiate, generate and archive reports pertaining to detainee death reviews." Pineiro Supp. Decl. ¶ 55. Further, "[t]he reports that Plaintiff seeks are initiated, drafted, generated, finalized, and archived by [the Relevant Directorates], and not by any other ICE directorates." *Id*. ¶ 57. As such, given that the Relevant Directorates are the only ICE directorates tasked with producing and archiving reports relating to ICE's Detainee Death Review process, those were the only ICE directorates that conducted searches for records responsive to

---

[2]     Plaintiff's Response additionally cites the Directive as proof that ICE may be in possession of one Detainee Death Review report relating to Óscar López Acosta, an individual who died outside of ICE's custody. Pl.'s Resp. at n.4. However, the Directive only states that a "Detainee Death Review *can be* completed if a citizen is no longer in ICE custody, 'when [the] death occurs within a reasonable time frame not to exceed 30 days of release from ICE custody and review is requested by the ICE Directive[.]'"  *Id.* (emphasis added).  The subject non-citizen died while outside of ICE custody, thus a Detainee Death Review was not automatically triggered, and no Detainee Death Review pertaining to the death of non-citizen Lopez Acosta was conducted. Pineiro Supp. Decl. ¶ 16. Put another way, ICE cannot produce a Detainee Death Review report that was never required to be created, and accordingly, was never created for Óscar López Acosta.

Plaintiff's FOIA requests. Accordingly, any record that ICE leadership or the Office of the Principal Legal Advisor may have would be duplicative and Plaintiff cannot impugn the adequacy of ICE's search for its purported failure to produce duplicative records.

It is well-established that FOIA does not require agencies to produce duplicate records. *See*, e.g., *Jett v. FBI*, 139 F.Supp.3d 352, 365 (D.D.C. 2015) ("The statute is not a discovery tool that requires agencies to produce every conceivable copy in the possession of every governmental custodian."); *Defs. of Wildlife v. Dep't of Interior*, 314 F.Supp.2d 1, 10 (D.D.C. 2004) ("[I]t would be illogical and wasteful to require an agency to produce multiple copies of the exact same document."); *Crooker v. State Dep't*, 628 F.2d 9, 11 (D.C. Cir. 1980) (per curiam) ("Where the records have already been furnished, it is abusive and a dissipation of agency and court resources to make and process a second claim"). To the extent, then, that Plaintiff argues that ICE failed to satisfy its search obligations under FOIA by failing to search ICE's offices and directorates which may or may not be in possession of duplicative records, then that argument must fail.

**B.      ICE Reasonably Identified and Searched All Offices and File Systems Where Records Were Likely To Be Found**

While Plaintiff asserts that ICE was obligated under FOIA to search all locations likely or reasonably likely to yield responsive records they also argue that even if the Relevant Directorates "were the only appropriate ICE directorates to be searched, those directorates impermissibly searched only those locations 'most likely' to yield responsive records." Pl.'s Resp. at 13.  In support of this contention, Plaintiff primarily relies upon *DiBacco v. U.S. Army*, 795 F.3d 178, 190 (D.C. Cir. 2015). Plaintiff also cites *Oglesby*, 920 F.2d at 68, *American Oversight v. Office of Management & Budget*, 613 F. Supp. 3d 219 (D.D.C. 2020), and *American Oversight v. General Service Administration*, 486 F. Supp. 3d 306 (D.D.C. 2020), for the proposition that an agency

must justify its decision to not search particular locations for records sought after in FOIA requests. Pl.'s Resp. at 13–14. However, Plaintiff's reliance on these cases is misplaced.

For example, in *DiBacco*, the plaintiff contested the adequacy of an agency's search because its declaration stated that only a search of locations "most likely" to yield responsive records were searched. *DiBacco*, 795 F.3d at 190. While the D.C. Circuit agreed that normally "'most likely' is not the relevant metric" in assessing the adequacy of an agency's search, it immediately clarified that the agency's search was adequate for the purposes of the plaintiff's FOIA request because its declaration explicitly clarified that it searched the only location under its control that would have contained records that were responsive to the plaintiff's FOIA request. *Id*. Under *DiBacco*, then, so long as a FOIA defendant can show that all locations reasonably likely to yield responsive records were searched, the FOIA defendant's search must be deemed to have been adequate. *Id*.

Plaintiff's misapplication of *DiBacco* is evident in its discussion of ICE's search for responsive records pertaining to Plaintiff's FOIA request for Root Cause Analysis reports.[3] Specifically, ICE's declarations established that when Enforcement and Removal Operations received Plaintiff's FOIA request for Root Cause Analysis reports, that directorate forwarded the request to its Heath Service Corps ("Health Service"). Pineiro Decl. ¶ 48. From there, the Health Service forwarded Plaintiff's FOIA request for Root Cause Analysis reports to the offices—i.e., the Medical Quality and Management Unit ("Medical Quality Unit"), the Medical Case Management Unit ("Case Management Unit"), and the Investigations Unit—offices within the

---

[3]     Plaintiff, in its Response, refer to ICE's Root Cause Analysis reports as "Event Review, Root Cause Analysis, or Action Plan Reports." *See*, e.g., Pl.'s Resp. at pg. 23. When ICE refers to Root Cause Analysis, then, it is referring to what Plaintiff calls Event Review, Root Cause Analysis, or Action Plan Reports.

Health Service that would "most likely" have responsible records. *Id*. ¶ 50. The Case Management Unit subsequently searched for records responsive to Plaintiff's FOIA request for Root Cause Analysis reports, *Id*. ¶ 54, while the Investigations Unit did not conduct a search, concluding that it "most likely" did not have any responsive records in its possession. *Id*. ¶¶ 57–58. Plaintiff summarily concludes that ICE's search was inadequate under FOIA because of the usage of the term "most likely" in the Piniero Declaration. Pl.'s Resp. at 13–15. But ICE did not limit its search to only one record system if there were others that were likely to turn up the information requested.

Contrary to Plaintiff's conclusions, ICE adequately searched its record systems. Specifically, Plaintiff's FOIA request for Root Cause Analysis reports were forwarded to Health Service because that is the office within ICE "which would generate these reports, as part of their responsibilities pertaining to Detainee Death Reviews." Pineiro Supp. Decl. ¶ 28. Further, the Medical Quality Unit was delegated to conduct the search because it "is the office that conducts root cause analysis and completes the Root Cause Analysis Reports for [Health Service] staffed facilities." *Id*. ¶ 30. Additionally, the Medical Quality Unit focused its search on its internal SharePoint site because "no other locations were reasonably expected to contain records responsive to the request, should they exist." *Id*. ¶ 31. Finally, the Investigations Unit was sent Plaintiff's FOIA request for Root Cause Analysis reports, but the Medical Quality Unit is the office that completes the Root Cause Analysis Report, and thus any additional searches within Health Service would not impact the adequacy of the search for responsive records. *Id*. at n. 7.

Thus, ICE was justified in primarily tasking its Medical Quality Unit, which is the ICE office that produces Root Cause Analysis reports, to conduct the search for Plaintiff's FOIA request for Root Cause Analysis reports. As each of the locations reasonably expected to yield

responsive records were searched, ICE has satisfied its search obligations under FOIA and the applicable case-law.

### C.     The Health Service Employed Reasonable Search Terms to Identify Records

While Plaintiff purports to challenge the search terms utilized by the Health Service, it only specifically challenges the search terms employed by the Case Management Unit. Pl.'s Resp. at 16–18.  But the Case Management Unit is not involved in the production of Root Cause Analysis reports, and so the search terms that unit employed—whether adequate or not—do not undermine the adequacy of ICE's search. *See,* e.g., Pineiro Supp. Decl. at n. 7.

Plaintiff objects to the fact that the Case Management Unit's search did not use "Event Review," "Root Cause Analysis," or "Action Plan Reports," but instead used the terms "CAP," "UCAP," "detainee death," "mortality review," and "death." Pl.'s Resp. at 16. While Plaintiff does not object to the fact that the search included the names of the individuals mentioned in the FOIA request, Plaintiff objects to the fact that ICE's declaration did not clarify "whether [ICE] searched for variations of detainees' names to ensure that responsive results would not be excluded due to choices in the formatting of the term." *Id*. at 17. But, the Pineiro Declaration and the Pineiro Supplemental Declaration demonstrate why Plaintiff's objections are misplaced.

As ICE explains, "[the Case Management Unit's] responsibilities include: site visits at detention facilities, which house ICE detainees for greater than 72 hours and are not staffed by Health Service; to evaluate compliance with the health care section of [ICE's National Detention Standards and Performance Based National Detention Standards]; write reports of site visit findings and recommendations; and conduct investigations into detainee complaints related to health care." Pineiro Supp. Decl. ¶ 37. Further, "[the Case Management Unit] may request a Uniform Corrective Action Plan [ ] from detention facilities as a way to address deficiencies found

during site visits to the facilitate." *Id.*. "[Uniform Corrective Action Plans] may be requested from facilities that house ICE detainees, including, as part of a follow-up to a mortality review." *Id*. As such, "[g]iven the fact that the [Case Management Unit] does not compile the Root Cause Analysis Reports that Plaintiff seeks," it utilized terms reasonably likely to locate potentially responsive records based on the subject matter of the FOIA request, "including the fact that the records were pertaining to ICE detainee deaths, and the way in which the [Case Management Unit's] regional offices maintain records." *Id*. ¶ 38.

In other words, because the Case Management Unit does not produce or keep Root Cause Analysis reports, there was no reason for it to employ search terms such as: "Event Review," "Root Cause Analysis," or "Action Plan Reports." Instead, it rationally employed search terms that were reasonably likely to yield results based on the work that it is normally assigned, which determines the way in which it maintains its records. *Id*. ¶ 39. As such, ICE employed proper and adequate search terms in relation to the FOIA request at issue.

## II.     ICE'S WITHHOLDINGS ARE SUPPORTED BY LAW

### A.     ICE Has Justified Withholding Records Pursuant to Exemption 5

Plaintiff contends that the information ICE has withheld pursuant to Exemption 5's deliberative process privilege is neither pre-decisional nor deliberative, and therefore should be disclosed. Pl.'s Resp. at 22–26. In the alternative, Plaintiff argues that even if the information withheld pursuant to Exemption 5's deliberative process privilege is pre-decisional and deliberative, ICE has failed to establish any foreseeable harm that would ensue because of disclosure, and therefore the aforesaid information should be disclosed. Plaintiff is entirely incorrect when it claims that Exemption 5 privileges do not apply to ICE's withholdings. *Id*. at 27–28. ICE's declarations and *Vaughn* Index, along with the case-law which governs the proper

application of withholdings under the deliberative process privilege in FOIA cases, amply justify ICE's Exemption 5 withholdings.

> **1.    ICE has shown that the records withheld under Exemption 5 are connected to a decision-making process under the deliberative process privilege**

As an initial matter, for agency information to be properly withheld pursuant to the deliberative process privilege, it must be both pre-decisional and deliberative. *Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). Withholdings under the deliberative process are deliberative if they reflect the give-and-take of the consultative process. *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (internal quotation marks omitted). Moreover, a document will be regarded as pre-decisional "if it precedes, in temporal sequence, the 'decision' to which it relates," *Abtew*, 808 F.3d at 898. (citation omitted), or if it was "'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made," *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). Moreover, withholdings under the deliberative process privilege are pre-decisional if they pertain to internal agency communications regarding proposed policy recommendations. *See Coastal States Gas Corp.* 617 F.2d at 854 (holding that "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" are pre-decisional); *see also Arab Am. Inst. v. Off. of Mgmt. & Budget*, Civ. A. No. 18-0871, 2020 WL 4698098, at *6–7 (D.D.C. Aug. 13, 2020) (holding same).

Further, it is well-established that agencies are permitted to withhold purely factual information contained in draft documents if disclosure of such factual information sufficiently integrated with the deliberative material subject to Exemption 5 withholding. *Frontier Found. v.*

*Dep't of Just.*, 739 F.3d 1, 13 (D.C. Cir. 2014) (finding that "context matters," and here entire document, including factual material, "'reflects the full and frank exchange of ideas'" so that factual portions "'could not be released without harming the deliberative processes of the government'" (citation omitted)); *Quarles v. Dep't of Navy*, 893 F.2d 390, 392-93 (D.C. Cir. 1990) (withholding factual material because it would expose agency's decision-making process and chill future deliberations); *Horowitz v. Peace Corps*, 428 F.3d 271, 277 (D.C. Cir. 2005) (protecting requested document where the decisionmaker's "thought processes are woven into document to such an extent" that any attempt at segregating out information would reveal agency deliberations).

Pursuant to the deliberative process privilege of Exemption 5, ICE withheld materials reflecting pre-decisional drafts and deliberative internal discussions pertaining to the First and Second Healthcare and Security Compliance Analysis reports and the Root Cause Analysis and Action Plan reports, which Plaintiff requested in its FOIA requests. Pineiro Decl. ¶ 85. These materials include, for example: "opinions, edits, comments, conclusions, and recommendations suggested in . . . unfinalized draft reports"; "non-final proposed recommendations"; "non-final summaries of the facts" underlying detainee deaths; and "non-final recommendations pertaining to the training of staff within the Mortality Review Reports." *Id.* ¶¶ 85–89.

Further, ICE's Exemption 5 withholdings relate to internal agency assessments and recommendations regarding whether "changes to ICE policies, procedures or practices are warranted." Pineiro Supp. Decl. ¶ 70. Importantly, ICE has withheld a portion of pages 499 to 502 to protect non-final deliberative information as it pertains to potential process vulnerabilities identified during Root Case Analyses and Action Plans. See *Vaughn* Index. The portions withheld specifically state that they are non-final decisions requiring additional agency review and consideration.  This information does not reflect final agency actions or policy.  Instead, it reflects

an issue the author has determined to be, in his/her judgment, worthy of discussion or consideration by colleagues or superiors, and its release would only serve to confuse the public. This privilege protects not merely documents, but also the integrity of the deliberative process itself where the exposure of that process would result in harm. In other words, the redacted material contains the give-and-take of the consultative process and assesses the merits of particular viewpoints and comments.  Release of this material would expose the opinions, advice, or recommendations offered during agency decision making and also cause public confusion.  *Id*. ¶ 75.

Moreover, "[w]ith regard to the factual information contained within the documents, [ICE redacted information] contain[ing] edits and comments and non-final summaries of the facts" underlying the deaths of ICE detainees. *Id*. ¶ 68. At points, "[t]he factual information is so thoroughly integrated with the deliberative material that its disclosure would expose or cause harm to agency deliberations." *Id*. More information about ICE's withholdings based upon the deliberative process privilege and the foreseeable harm that would result from disclosure is detailed in ICE's Supplemental *Vaughn* Index accompanying Supplemental Pineiro Declaration. ICE's Supp. *Vaughn* Index at 12–17.

ICE has also demonstrated that records withheld under Exemption 5 are connected to a decision-making process, as required to invoke the deliberative process privilege. Specifically, ICE has pointed to several decisions and policies to which its withholdings under the deliberative process privilege were antecedent, rendering the information contained in these withholdings pre-decisional. *See*, e.g., Pineiro Supp. Decl. ¶ 70 Plaintiff attempts to categorize information withheld pursuant to Exemption 5 as primarily relating to analysis and assessment of past incidents, and on those grounds, argues that ICE's withholdings do not relate to any deliberations regarding pre-decisional policy changes or decisions. Pl.'s Resp. at 22. However, while, in general, the

"predecisional" requirement excludes a document that reflects the consummation of the agency's decisionmaking process and not a merely tentative position, a document may qualify for protection even when "nothing else follows it." *Nat. Res. Def. Council ("NRDC") v. EPA*, 19 F.4th 177, 184 (2d Cir. 2021).

Sometimes a proposal "dies on the vine" and documents discussing such dead-end ideas can hardly be described as reflecting the agency's chosen course. *Id.* Similarly, the Supreme Court has cautioned that its "emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared" and that "courts should be wary of interfering with" an agency's "continuing process of examining [its] policies." *Id.* (citing *NLRB* v. *Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975)). "To determine whether a document is "deliberative," the Court determines whether the document was "prepared to help the agency formulate its position," *Fish & Wildlife Serv. v. Sierra Club*, 141 S. Ct. 777, 786 (2021) by analyzing "if it reflects the give-and-take of the consultative process."" *NRDC*, 19 F.4th at 184. "[T]he key question we keep in mind when assessing the application of the deliberative process privilege to an agency record is whether disclosure would tend to diminish candor within an agency." *NRDC v. EPA*, 954 F.3d 150, 158 (2d Cir. 2020). Further,

> Agencies, are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and courts should be wary of interfering with this process. Thus, even if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process. Agencies, are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and courts should be wary of interfering with this process. Thus, even if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was

> generated as part of a definable decision-making process. A requestor is incorrect to state that the agency must identify a specific decision corresponding to each communication. The emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared.

*Gold Anti-Trust Action Comm., Inc., v. Bd. of Governors of the Fed. Res. Sys.*, 762 F. Supp. 2d 123, 135-136 (D.D.C. 2011). Accordingly, as explained in ICE's declarations and *Vaughn* indices, ICE's Exemption 5 withholdings sufficiently relate to the pre-decisional process and evidence deliberative discussions of policy proposals and recommendations.  Pineiro Supp. Decl. ¶ 62 - 71.

### 2.    ICE has shown that disclosure of the records withheld under Exemption 5 would lead to foreseeable harm

Plaintiff contends that ICE has failed to demonstrate any foreseeable harm that would ensue by disclosure of information withheld pursuant to Exemption 5. Pl.'s Resp. 26 – 27.  Yet, contrary to Plaintiff's representations, disclosing the withheld information would indeed result in foreseeable harm and ICE has provided sufficient details of the withheld information and specified the harms that would result if the information was released. Pineiro Supp. Decl. ¶¶ 62 – 71. Invariably, "[t]he degree of detail necessary to substantiate a claim of foreseeable harm is context-specific." *Rosenberg v. U.S. Department of Defense*, 442 F.Supp.3d 240 (D.D.C., 2020). And in this case, ICE has carried its burden under the deliberative process privilege because it has provided "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370 (D.C.Cir. 2021); Pineiro Supp. Decl. ¶¶ 62 – 71.

For example, ICE has withheld Exemption 5 information relating to "ICE's non-final determinations as it pertains to the evaluation of detainee deaths, potential causes of death, potential recommendations and potential policy changes, as well as the agency's reasoning, as it

pertains to the detention of non-citizens pursuant to ICE immigration enforcement responsibilities"

so as to refrain from "confus[ing] the issues and mislead[ing] the public by [the] dissemination of

documents suggesting reasons and rationales for a course of action, which were not in fact the

ultimate reasons for the agency's final determinations and any subsequent actions." Pineiro Supp.

Decl. ¶ 72. Additionally, ICE has withheld "non-final recommendations pertaining to the training

of staff as it pertains to the detention of non-citizens," the release of which would "discourage the

expression of candid opinions and [would] inhibit the free and frank exchange of information and

ideas between agency personnel, [and] which would chill intra- and inter-agency communications

and adversely impact the quality of internal policy decisions and the development of ICE agency

positions." *Id*. ¶ 74. While Plaintiff is entitled to be dissatisfied with ICE's explanations, "[g]iven

the preliminary nature of the [withheld information], the chilling effect of public disclosure is in

some sense self-evident, and it is difficult to see how ICE could have provided any additional

explanation as to how disclosure of the draft will cause future agency communications to be

chilled. *Nat'l Immigr. Project of Nat'l Lawyers Guild v. ICE*, Civ. A. No. 17-2448 (APM), 2020

WL 5798429 (D.D.C. Sept. 29, 2020)

Therefore, ICE has identified specific harms that would result if information was released

to the public.  ICE's declarations and *Vaughn* indices satisfies its burden to meet the foreseeable

harm standard.  Indeed, the internal policy-related considerations and discussions withheld by ICE

are at the very heart of the deliberative-process privilege, as disclosing them would stifle candid

internal discussions. *See*, e.g., Pineiro Supp. Decl. ¶¶ 65 – 66. *See Coastal States Gas Corp.*, 617

F.2d 854 at 866 (D.C. Cir. 1980).  Accordingly, Defendants respectfully request summary

judgment with respect to its Exemption 5 withholdings in this case.

**B.**   **ICE's Has Justified Withholding Records Pursuant to Exemption 7(E)**

Under Exemption 7(E), law enforcement agencies are permitted to withhold information pertaining to law enforcement that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Plaintiff does not dispute that ICE is a law enforcement agency, Pl.'s Resp. at 29. A law enforcement agency "is entitled to deference when it claims that records were compiled for law enforcement purposes." *Advancement Project v. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128 (D.D.C. 2021) (citations omitted). The D.C. Circuit has recognized that "Exemption 7(E) sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

Exemption 7(E) applies to records which involve the enforcement of civil and criminal law, which is understood to "entail[] more than just investigating and prosecuting individuals after a violation of the law." *Pub. Emps. for Env't Resp. v. U.S. Sect., Int'l Boundary & Water Com'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014) (citing *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002). As the Supreme Court has explained, the "ordinary understanding of law enforcement includes. . . steps designed to prevent criminal activity and to maintain security." *Milner v. Dep't of Navy*, 562 U.S. 565, 582-583 (2011). Further, once an agency shows that a record was produced for law enforcement purposes, it need only "demonstrate logically how the release of [it] might create risk of circumvention of the law," *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009), for its Exemption 7 withholdings to be sustained during

15

litigation.[4] Importantly, under the FOIA, agencies are permitted to assert Exemption 7(E) to preserve security at agency detention facilities. *ACLU v. Dep't of Homeland Sec.*, 738 F. Supp. 2d 93, 118–19 (D.D.C. 2010) (upholding ICE's Exemption 7(E) withholdings relating to information which, if disclosed, would compromise security at ICE detention facilities).

Nevertheless, Plaintiff argues that ICE has improperly withheld records under Exemption 7(E) because it has supposedly failed to provide sufficient facts to show that the records at issue were compiled for law enforcement reasons and pursuant to an identified investigative or prosecutorial purpose. Pl.'s Resp. at 29–37. More specifically, Plaintiff repeatedly and inaccurately characterizes ICE's representations to the Court as being supposedly founded upon the conclusory premise that the records withheld by ICE pursuant to Exemption 7(E) were produced for law enforcement purposes simply because ICE itself is a law enforcement agency. *Id*. Then, Plaintiff cites to inapplicable authorities by way of demonstrating that ICE has failed to establish that the withheld information was compiled for law enforcement purposes or for investigative and/or prosecutorial reasons. *Id*. However, this is a misrepresentation of ICE's position.

ICE has abundantly elucidated that the information withheld under Exemption 7(E) related to the conduct of ICE's law enforcement responsibilities and was withheld to maintain security at ICE facilities and to prevent circumvention of the law. *See*, e.g., ICE Supp. *Vaughn* at 1–14. As such, the information for which Exemption 7 has been asserted in the instant matter satisfies this threshold requirement as required by *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982). Pursuant to the Immigration and Nationality Act ("INA"), the Secretary of Homeland Security is

---

[4]      Crucially, Plaintiff nowhere contests ICE's assertion that the information it has withheld pursuant to Exemption 7(E) would, if disclosed, risk circumvention of the law.

charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. Pineiro Decl. ¶ 93; 8 U.S.C. § 1103. ICE "is the largest investigative arm of [the Department], and is responsible, among other duties, for identifying and eliminating vulnerabilities within the nation's borders." Pineiro Decl. ¶ 92. Further, "ICE is tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises." *Id*. Thus, the records withheld pursuant to Exemption 7E were compiled for law enforcement purposes. Pineiro Decl. ¶ 92; Pineiro Supp. Decl. ¶ 82.

Moreover, the information exempted by ICE is extremely sensitive and crucial for law enforcement purposes. The withheld information pertains to the specific internal and external locations of security and surveillance cameras at relevant ICE detention facilities, as well as security vulnerabilities based on the locations of the cameras; staffing numbers, shortages and potential security vulnerabilities deriving from staffing levels at relevant ICE facilities; and the layout of relevant ICE detention facilities, locations of the cells, the layout of all portions of the subject facilities, including descriptions of how facilities are designed, the locations of security observation points, and the locations of guard stations; and the detainee numbers in specific portions of relevant ICE detention facilities.  Pineiro Decl. ¶¶ 101–14. Release of the information withheld pursuant to Exemption 7(E) would involve the disclosure of procedures for law enforcement investigations or prosecutions, compromise the security of ICE detention facilities, and ultimately, would reasonably be expected to risk circumvention of the law. *Id*. ¶¶ 101–14. Additional information regarding ICE's Exemption 7(E) withholdings can be found in ICE's declarations and *Vaughn* indices. Pineiro Supp. Decl. ¶¶ 78–83; Supp. *Vaughn* at 1–14.

Thus, despite Plaintiff's assertions to the contrary, ICE has met its burden that the documents and information it has withheld were created for law enforcement purposes. *NRDC v. Nuclear Regulatory Comm'n,* 216 F. 3d 1180, 1190 (D.C. Cir. 2000).  Further, ICE's declarations and *Vaughn* indices demonstrate that the withheld information logically falls within the claimed exemptions, and Plaintiff has not contested that the withheld information, if released, would risk circumvention of the law.  A court "may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. v. Dep't of Labor,* 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (citation omitted). Accordingly, Defendants respectfully request summary judgment with respect to its Exemption 7(E) withholdings in this case.

## III.     ICE PERFORMED AN ADEQUATE SEGREGABILITY ANALYSIS

Finally, Plaintiff takes exception to the adequacy of ICE's segregability analysis. More precisely, Plaintiff contends that ICE has not demonstrated with sufficient specificity why information that it has withheld cannot be further segregated. Pl.'s Resp. at 37–38. Plaintiff also argues that ICE has "not shown that each page consists of entirely exempt, non-segregable material, particularly where the reports at issue are primarily factual assessments and analyses of the circumstances surrounding an individual's death." Pl.'s Resp. at 38.

The Supplemental Pineiro Declaration provides additional details regarding its segregability analysis. ICE confirms that "[s]ignificant time and resources would be necessary to separate out disjointed words, phrases and sentences which taken separately or together have

minimal or no informational content. Thus, any non-exempt information is inextricably intertwined with the non-exempt information, such that it cannot be reasonably segregated." Pineiro Supp. Decl. ¶ 85. Consequently, ICE is not required to segregate and release this subject information. *See*, e.g., *Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 124 (D.D.C. 2014) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977)).

Moreover, ICE clarifies that as for "the factual information contained within [a] draft [memorandum or] record, [because] the information is dispersed throughout the records and . . . was not finalized," and—as discussed in relation to ICE's Exemption 5 withholdings—"is so thoroughly integrated with the non-factual material . . . disclosure would expose or cause harm to the agency's deliberations."  Pineiro Supp. Decl. ¶ 86.

As such, this Court should find that ICE's segregability analysis is adequate and should grant Defendants' summary judgment accordingly.

*     *     *

## <u>CONCLUSION</u>

For the foregoing reasons, ICE respectfully requests that this Court grant its Motion for

Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment.

Dated: May 5, 2023
      Washington, DC

                        Respectfully submitted,

                        MATTHEW M. GRAVES, D.C. BAR #481052
                        United States Attorney

                        BRIAN P. HUDAK
                        Chief, Civil Division

                        By:         /s/ *Fithawi Berhane*
                            Fithawi Berhane
                            Assistant United States Attorney
                            601 D Street, NW
                            Washington, DC 20530
                            (202) 252-6653
                            Fithawi.Berhane@usdoj.gov

                        *Attorneys for the United States of America*