UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN OVERSIGHT**, <br><br> Plaintiff, <br><br> v. <br><br> **DEPARTMENT OF HOMELAND SECURITY,** *et al.*, <br><br> Defendants. | Case No. 1:21-cv-3030-TNM |

### MEMORANDUM OPINION

A nonprofit sought records from a federal agency under the Freedom of Information Act. It got nothing. So it sued. The agency produced some records, but withheld others. The nonprofit was not satisfied, so both sides moved for summary judgment. Because the agency's search was inadequate, it must redo parts of it. And because the agency has failed to justify its withholdings under Exemption 3 or 5, it must release the documents it withheld under those exemptions.

### I.

A nonprofit, American Oversight, lodged seven FOIA requests with the Department of Homeland Security (DHS), seeking various documents relating to people who had died in U.S. Immigration and Customs Enforcement's custody. Defs.'s Stat. of Mat. Facts (SUMF) ¶¶ 1–9, ECF No. 21-1. In particular, Oversight asked for five types of reports that ICE generates when detainees die in its custody: "Detainee Death Review" reports; "Healthcare and Security Analysis" reports; "Event Review, Root Cause Analysis," or "Action Plan" reports; independent

autopsies; and "Mortality Review" reports. *See generally* Declaration of Fernando Pineiro (Pineiro Decl.), ECF No. 21-3.

After getting nothing, Oversight sued, claiming that DHS (and its component, ICE) failed to adequately search for documents and withheld documents that they should have produced. *See* Compl., ECF No. 1. After Oversight sued, ICE produced some documents.[1] But Oversight still believed that ICE was holding out. So both sides moved for summary judgment.

## II.

To get summary judgment, the parties must show "that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Under FOIA, agencies must disclose requested "documents . . . unless the documents fall within one of nine enumerated exemptions." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). Courts construe those FOIA exemptions narrowly. *See Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). At summary judgment, the agency bears the burden of showing that its claimed exemptions apply. *See ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011).

To meet that burden, agencies often point to declarations that describe why a given exemption applies. *See Shapiro v. DOJ*, 893 F.3d 796, 799 (D.C. Cir. 2018). Courts presume that those declarations are made in good faith. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). And the Court may grant summary judgment for an agency if nothing in the record shows bad faith or contradicts the agency's position. *See Aguiar v. DEA*, 865 F.3d 730, 735 (D.C. Cir. 2017). Still, the Court is mindful that through FOIA, Congress sought to

---

[1] DHS says that any responsive documents "would fall under the purview of ICE." Joint Status Rep. ¶ 2, ECF No. 9. So the Court refers only to ICE from here on out.

pierce the veil of government secrecy and expose agency action to the light of public scrutiny. *See Cntr. for Immigr. Studies v. USCIS,* 628 F. Supp. 3d 266, 270 (D.D.C. 2022).

### III.

First, some housekeeping. The parties press many issues. But on a few, they talk past one another.

ICE moves for summary judgment on its withholdings under Exemptions 3, 5, 7(C), and 7(E). *See generally* Gov't Mem. for Summ. J. (Gov't MSJ), ECF No. 21-2. Oversight moves for summary judgment on the adequacy of ICE's search and its Exemption 3 and 5 withholdings.[2] *See generally* Oversight Mem. for Summ. J. (Oversight MSJ), ECF No. 24. From there, the briefing gets messy.

In its Cross-Motion for Summary Judgment, Oversight said that it "[was] not . . . challenging ICE's redaction[s] . . . [under] Exemption 6 and Exemption 7(C)." *Id.* at 6 n.10. Based on that, ICE responded that its "Exemption 3 withholdings were simultaneously asserted with its Exemption 6 and 7(C) withholdings" so it would not "brief its Exemption 3 withholdings." Gov't Opp'n at 1 n.1, ECF No. 27. In other words, ICE claimed that because Oversight had conceded Exemptions 6 and 7(C), *and* those two exemptions covered all the same withheld material as Exemption 3, it did not need to argue about Exemption 3.

In its Reply, Oversight cried foul. It claimed that it had agreed not to challenge ICE's Exemption 6 and 7(C) withholdings only "based on the redactions as they appeared on the face of the records produced by ICE." Oversight Reply at 2, ECF No. 29. Put simply, Oversight disagrees that ICE's Exemption 3, 6, and 7(C) withholdings are coextensive; in its view, they do

---

[2] During summary judgment briefing, Oversight withdrew its Exemption 7(E) challenge. *See* Oversight Reply at 1 n.1, ECF No. 29. So the Court need not address that exemption.

not cover all the same redacted material.  And it decided not to challenge the Exemption 6 and 7(C) withholdings only based on that understanding.

Not finished, ICE moved for leave to file a Surreply.  Mot. for Leave to File Surreply, ECF No. 30.  In support, it claims that Oversight had waived its right to challenge Exemption 6 and 7(C) withholdings by failing to raise those challenges in its initial cross motion.  *See id.* Plus, ICE adds that it made "clear" in its Vaughn Index that this was the case.  *See* Surreply at 2–3, ECF No. 30-1.  The Court will grant ICE's motion for leave and consider its Surreply.  *See Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003).

*Which exemptions apply to what.*  ICE never clearly asserted Exemptions 3, 6, and 7(C) for all the same material.  So ICE cannot now claim that Exemption 6 and 7 cover all the same material as Exemption 3.

Start with ICE's productions.  ICE produced documents with labeled redactions.  *See, e.g.*, Oversight Ex. H, ECF No. 29-2.  Some redacted material is labeled "(b)(6); (b)(7)(C)," while other parts are labeled "(b)(3):Unspecified Statute" or "(b)(7)(E)."  *See id.*  But only a few of the many redactions specifically list all three exemptions: "(b)(6); (b)(7)(C); (b)(3):Unspecified Statute."  *See, e.g.*, *id.* at 7, 11, 15.  The rest list Exemptions 6 and 7(C) separately from Exemption 3.  That suggests that Exemption 6 and 7(C) covered the same material as Exemption 3 only where the document specifically says so.

Despites its protests, ICE's *Vaughn* Index helps it little.  *See Vaughn* Index, ECF No. 21-4.  In one part, the index explains that Exemption 3 "was asserted to immigration information that is deemed confidential by statute and/or regulation."  *Id.* at 8.  And it later says that "ICE is also asserting [Exemptions 6 and 7(C)] to protect this information."  *Id.* at 9.  Yet read in tandem with the labeled redactions in the documents it produced, that explanation is unclear.

4

True, it could conceivably be read to mean that ICE is invoking all three exemptions any time any one of those three exemptions is listed. But, coupled with the way that ICE labeled redactions, this more plausibly means that ICE is asserting Exemption 6 and 7(C) for some parts of the listed pages and Exemption 3 for others. So ICE's Exemption 3, 6, and 7(C) withholdings are only coextensive where ICE specifically said so in its labeled productions. *See Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 108 (D.D.C. 2021) ("Courts construe [FOIA] exemptions narrowly," and agencies bare the burden of showing why a given exemption applies).

*Exemption 3.*  That leaves many places where ICE relied on Exemption 3 alone to withhold information. And thus, the next question is whether ICE has met its burden of justifying those Exemption 3 withholdings. It has not.

In its Motion for Summary Judgment, ICE said only that it was planning to file an ex parte declaration under seal that would "support[] the propriety of [its] Exemption 3 withholdings." Gov't MSJ at 7. ICE did file a motion asking for leave to file that declaration under seal but then withdrew it. *See* Notice of Withdrawal of Motion, ECF No. 23. So in support, it points to a declaration that it never filed. That is no support at all. Thus, ICE must turn over all material withheld under only Exemption 3 (as determined by the labels in its productions).

*Exemptions 6 and 7(C).*  Oversight's challenge to ICE's Exemption 6 and 7(C) withholdings is limited. It challenges those exemptions only if the Court buys ICE's argument that they cover all the same material as Exemption 3. *See* Oversight Reply at 5 ("To the extent the Court consider Defendants' new assertion that Exemption 6 and 7(C)" covers the same material as Exemption 3, "Plaintiff challenges those withholdings."). But the Court has found

that redactions labeled only as Exemption 3 are not covered by Exemptions 6 or 7(C). And because the Government thus must produce the documents withheld solely under Exemption 3, this is a moot point. Oversight will get those documents.

So where does this leave things? ICE has failed to adequately support its Exemption 3 withholdings and thus must turn over those documents (or parts of documents) that it withheld under Exemption 3 alone. And that resolves Oversight's belated Exemption 6 and 7(C) challenge, mooting it.

With those disputes out of the way, on to the merits.

### A.

To satisfy FOIA, ICE must have "conducted a search reasonably calculated to uncover all relevant documents." *Aguiar*, 865 F.3d at 738 (cleaned up). Oversight claims that ICE's search was inadequate. *See* Oversight MSJ at 8. The Court agrees on a few points.

*Directorates.* Oversight first says that ICE "did not reasonably identify all directorates likely to possess responsive records." *Id.* at 9. ICE searched only two: Enforcement and Removal Operations and the Office of Professional Responsibility. Pineiro Decl. ¶ 27. But Oversight says that it should have searched others, particularly ICE's Office of the Principal Legal Advisor and ICE senior leadership. *See* Oversight MSJ at 11. That is especially so because ICE found only six of the dozens of reports that Oversight sought in its third FOIA request. *See* Oversight Reply at 13–14 ("Plaintiff is not asking for duplicative reports—just those that ICE has yet to find or produce in the first instance."). The Court agrees; ICE never explains why it found only a fraction of the reports for the 38 named detainees in Oversight's third FOIA request. *See* Pineiro Decl. at 18 n.18 ("A total of six reports were located.").

ICE says that it limited its search to two directorates because "no other offices were reasonably likely to have responsive records." Pineiro Decl. ¶ 27. And it adds that the two directorates it searched "are the two main offices involved in the Detainee Death Review process." Suppl. Decl. of Fernando (Pineiro Supp. Decl.) ¶ 55, ECF No. 28-2. More, "[t]he reports that [Oversight] seeks are initiated, drafted, generated, finalized, and archived by [those directorates], and not by any other" ones. *Id.* ¶ 58.

In many cases, that explanation might suffice. But here, ICE is missing most of the reports and provides no good explanation for why that is. More, as ICE admits, the Legal Advisor also reviewed at least 24 of the detainee deaths. *See* Pl.'s Stat. of Undisp. Mat. Facts (PSUMF) ¶¶ 5–6, ECF No. 25-2. And "senior leadership" joined those reviews as well. *Id.* ¶ 6. So in Oversight's view, ICE should have searched those groups too.

No matter, says ICE, the two directorates it searched "are the only ICE directorates tasked with producing and archiving reports relating to ICE's Detainee Death Review process. Gov't Reply at 3. So "any record that ICE leadership or the [Legal Advisor] may have would be duplicative." *Id.* at 4.

But that does not address the glaring problem: ICE found reports for only *six* of the 38 detainees mentioned in the third FOIA request. PSUMF ¶ 13. And it gives no good explanation for those missing documents. Unlike other allegedly missing documents, it never says that those documents do not exist nor explains why they have disappeared. So ICE's counter falls flat, and it must search those other groups. Without more, the Court cannot just assume that any reports found in other units would be duplicative.

*Search terms*. Oversight next quibbles with ICE's search terms for the third FOIA request. As Oversight sees it, one of ICE's units, the Medical Case Management Unit (MCMU),

7

crafted unreasonable search terms. None of ICE's offices used the names of the specific reports that Oversight sought: "event review," "root cause," or "action plan." Oversight MSJ at 16.

But as ICE explains, MCMU does not generate or "compile" those various reports, so it did not include their names in its searches. Supp. Pineiro Decl. ¶ 38. Instead, MCMU searched for the name of the death-related reports that it does generate, Uniform Corrective Action Plans and Correction Action Plans. *Id.* ¶ 37. Indeed, ICE explained that another unit, the Medical Quality and Management Unit (MQMU), was responsible for conducting root cause analyses and compiling them. *Id.* ¶ 42. So MCMU's terms were "reasonably calculated" to find any responsive documents that it would have. *Aguiar*, 865 F.3d at 738 (cleaned up).

Still, Oversight has another winning argument: ICE never clarified if it used "variations of detainees' names to ensure that responsive results would not be excluded due to choices in the formatting of the term." *See* Oversight MSJ at 17. In support, Oversight notes that the report for at least one of the detainees used a shortened version of the detainee's name. *Id.* at 17 n.16 (report for "Maria Celeste Ochoa-Yoc de Ramirez" titled "Maria Ocho-Yoc de Ramirez"). So if ICE used detainees' full names only, it might have missed responsive reports. *See Bagwell v. DOJ*, 311 F. Supp. 3d 223, 230 (D.D.C. 2018) (finding search inadequate where agency failed to use likely abbreviations or acronyms).

Rather than responding to that argument, the Government merely notes it, claims that the argument is "misplaced," and then proceeds to ignore it. Gov't Opp'n at 7. That will not cut it, especially given that the naming conventions in the ICE reports appear to depart from the detainees' full names. So ICE must search again using appropriate name variations.

*"Most likely" and a missing report.* Oversight's other arguments fail. It first nitpicks the language in ICE's declaration. As Oversight puts it, ICE searched "only those locations 'most

likely' to yield responsive records." Oversight MSJ at 13.  And "'most likely' is not the relevant metric."  *Id.* (quoting *DiBacco v. U.S. Army*, 795 F.3d 178, 190 (D.C. Cir. 2015)).

Here, Oversight focuses mostly on ICE's search in response to the third FOIA request.  In response to that request, ICE "reviewed the request to determine which [units] . . . would *most likely* have records responsive to the request."  Pineiro Decl. ¶ 50 (emphasis added).  Based on that, ICE tasked three units with the search—MQMU, MCMU, and IIU.  *See* Supp. Pineiro Decl. ¶ 29.  That was appropriate.

Oversight argues, basically, that an agency loses if it uses the words "most likely" in a declaration about its search.  That is not the standard.  True, an agency may not "limit its search to only one record system if there are others that are *likely* to turn up the information requested." *DiBacco*, 795 F.3d at 190 (cleaned up) (emphasis added).  But here, ICE said that "no other offices were reasonably expected to have responsive records."  Supp. Pineiro Decl. ¶ 29.  That is legally permissible.  ICE's "most likely" language does not make its search inadequate.

Still, as explained above, ICE must redo its search because it turned up only a few of the reports sought in the third FOIA request and never explained why that was so.[3]

**B.**

Next, consider Oversight's Exemption 5 challenge.  *See* 5 U.S.C. § 552(b)(5).  That exemption applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  *Id.*  And it "incorporates the privileges that the Government may claim when litigating against a private

---

[3]  Finally, Oversight makes a (very) qualified claim that the search was inadequate because ICE never produced two reports for one detainee.  Oversight Reply at 16 (challenging the search for these reports based on the same "adequacy of the search arguments made with respect to the other missing reports").  But this claim adds nothing new, so ICE must redo its search consistent with the directions above.

9

party." *Abtew v. DHS*, 808 F.3d 895, 898 (D.C. Cir. 2015).  Here, ICE invokes the deliberative process privilege to withhold draft Healthcare and Security Compliance Analysis reports and draft Root Cause Analysis reports.  *See* Pineiro Decl. ¶ 85.

The deliberative process privilege protects communications that are "both predecisional and deliberative." *Abtew*, 808 F.3d at 898.  "A document is predecisional if it precedes . . . the decision to which it relates." *Id.* (cleaned up).  And it "is deliberative when it is prepared to help the agency formulate its position, and it reflects the give-and-take of the consultative process." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021) (cleaned up).  Plus, there is a third requirement:  the agency must show that it "reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption." *Id.* at 369 (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)).

Oversight says that ICE improperly withheld the documents under this exemption for two reasons.  First, it says that the deliberative privilege process does not apply at all to the withheld documents.  *See* Oversight MSJ at 20.  Second, it urges that ICE has failed to explain how the documents' release would foreseeably harm it.  *See id.*  The Court agrees on that second point; ICE has failed to sufficiently explain how the documents' release would cause foreseeable harm.  So it must turn over all documents withheld under Exemption 5.

*1. Predecisional and deliberative.*  Start with the first two requirements.  Oversight insists that the withheld documents are neither predecisional nor deliberative because ICE never "identifies a single decision or policy to which any fully withheld record was allegedly antecedent." Oversight MSJ at 22.

ICE retorts that the various withheld draft reports contain "opinions, edits, comments, conclusions, and recommendations." Gov't Opp'n at 10 (quoting Supp. Pineiro Decl. ¶¶ 85–89).

10

And those "withholdings relate to internal agency assessments and recommendations regarding whether 'changes to ICE policies, procedures or practices are warranted.'" *Id.* (quoting Supp. Pineiro Decl. ¶ 70). Finally, those withheld reports had draft fact sections that had "non-final comments and edits to factual sections . . . identifying specific facts to focus on, review, and conduct follow-up work on." Supp. Pineiro Decl. ¶ 68.

ICE has met its burden of showing that its withholdings fall within the deliberative process privilege. For one, the information was predecisional. That is, it came before a decision. *See Abtew*, 808 F.3d at 898. And it was deliberative because it "was written as part of the process by which [ICE] came to that final decision." *See id.* at 899.

The Healthcare reports "predate the final [Detainee Death Reviews] in which the final agency position and recommendations from the draft reports were included." Pineiro Decl. ¶ 87. And Root Cause Analysis reports are created as part of ICE's detainee death review process and precede ICE's "final position as it pertain[s] to the detainee death reviews." Vaughn Index at 20. And both the Root Cause Analyses and Action Plans were "incorporated into the final Detainee Death Reports." *Id*. n.26. So those preliminary drafts were part of ICE's process of determining what to include in its final report. That counts as an agency decision.

*2. Foreseeable harm.* Still, Oversight is right about foreseeable harm: ICE has not shown that the release of these documents would harm it. To meet that burden, ICE "cannot rely on mere speculative or abstract fears, or fear of embarrassment." *Reps. Comm.*, 3 F.4th at 369 (cleaned up). And it must provide more than just "generalized assertions." *Id.* (cleaned up). Thus, ICE must explain "how disclosure would—not could—adversely impair internal deliberations." *Id.* at 369–70 (cleaned up). And as part of that, it must detail the "basis and likelihood of that harm." *Reps. Comm.*, 567 F. Supp. 3d at 110.

11

In both its declarations and its *Vaughn* Index, ICE provides little more than generalized assertions. For example, it says that releasing those drafts "would only serve to confuse the public." Vaughn Index at 16. And it claims that "exposure of [the deliberative] process would result in harm." *Id.* More, it insists that releasing the drafts would "discourage the expression of candid opinions . . . between agency personnel" and "adversely impact the quality of internal policy decisions." *Id.* at 16–17.

But that is no better than explanations rejected by the Circuit. *See, e.g.*, *Reps. Comm.*, 3 F.4th at 370 ("Disclosure . . . would have an inhibiting effect upon agency decisionmaking and the development of policy because it would chill full and frank discussions. . . . If agency personnel know that their preliminary impressions . . . would be released to the general public, they would be less candid.") (cleaned up). Indeed, ICE never tethers its concerns to these particular documents. To do that, it would need to explain how disclosing the documents "at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* ICE's objections could apply to basically any withheld draft. *See id.* (rejecting agency concerns as "just mouthing the generic rationale for the deliberative process privilege itself"). So ICE has not met its burden and must release all documents withheld solely under Exemption 5.

## C.

The Court may not approve withholdings without determining whether ICE has met its burden of adequately segregating non-exempt information. *See Machado Amadis v. DOS*, 971 F.3d 364, 371 (D.C. Cir. 2020). But here, the Court approves no challenged withholdings; ICE loses on each challenged exemption. *See, e.g.*, *King & Spalding LLP v. HHS*, 330 F. Supp. 3d

477, 500 (D.D.C. 2018), *on recons.,* 395 F. Supp. 3d 116 (D.D.C. 2019) (finding similar for documents ordered released).  So there are no segregability concerns here.

## IV.

Oversight is entitled to summary judgment on Exemptions 3 and 5.  So ICE must release the documents it withheld solely under both exemptions.[4]  The Court will also grant Oversight's Cross-Motion for Summary Judgment on the adequacy of ICE's search and deny ICE's.  ICE must search both senior leadership and the Office of the Principal Legal Advisor for the missing documents, and it must properly search for the detainees' names.

A separate Order will issue today.


Dated: September 5, 2023                                              TREVOR N. McFADDEN, U.S.D.J.

---

[4] For Exemption 3, ICE must release those documents labeled as withheld only under "(b)(3)" in its productions.